[L. A. No. 6413. Department One.—July 26, 1921.]

JOHN IVANCICH, Respondent, v. W. T. DAVIES, Appellant.

[1] STREET RAILROADS—RELATIONSHIP OF CARRIER AND PASSENGER—BOARDING OF CAR AT REGULAR STOPPING PLACE—ACTUAL KNOWLEDGE IMMATERIAL.—One who boards a street-car at a regular stopping place becomes a passenger whether or not the carrier actually knows of his presence on the car, since in such a case knowledge is implied.

[2] ID.—MODE OF BOARDING CAR—VIOLATION OF RULE—SUBSEQUENT INJURY—RELATIONSHIP UNAFFECTED.—A person is not necessarily a trespasser after he boards a car, even if no fare has been collected from him before he suffers an injury, simply because he

1. Who is passenger, note, 1 Ann. Cas. 451.

has violated a rule of the company as to the mode of boarding the car.

[3] CARRIERS—BOARDING OF JITNEY BUS IN MOTION—NONPAYMENT OF FARE—RIDING ON RUNNING-BOARD—RELATIONSHIP OF CARRIER AND PASSENGER.—One who boarded a jitney bus after it had started from its regular stopping place was none the less a passenger because he boarded the bus while it was in motion and had not paid his fare and was riding on the running-board and the operator of the bus had no actual knowledge of his presence, where it was the custom to collect the fares at the end of the journey, and the passenger was able, ready, and willing to pay.

[4] ID.—RIDING ON RUNNING-BOARD—CROWDED CONDITION OF BUS—LACK OF CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW.—One who rides on the running-board of a jitney bus is not guilty of contributory negligence as a matter of law, where the bus was crowded and passengers could not get inside the entrance.

[5] ID.—COLLISION OF JITNEY BUS WITH STANDING TRUCK—INJURY TO PASSENGER RIDING ON RUNNING-BOARD—CONTRIBUTORY NEGLIGENCE—INSUFFICIENCY OF EVIDENCE AND FINDING.—In an action for personal injuries received while riding on the running-board of a jitney bus from a collision with a standing truck, it cannot be said the deduction necessarily follows that it was the protrusion of the plaintiff's body beyond the side of the bus that caused the injury, where there was evidence that the fender on the truck was higher than the one on the bus and that it would have been possible for the truck fender to have come in contact with a passenger on the running-board without first striking the fender of the bus, and the court's finding did not state what part of the two machines came in contact with the plaintiff.

[6] ID.—RIDING BACKWARDS ON RUNNING-BOARD—WANT OF ORDINARY CARE—QUESTION OF FACT.—It is the duty of a passenger on a jitney bus to use ordinary care, and whether in a given case riding backward on the running-board shows a want of such care must be determined by the circumstances of the case.

[7] ID.—WANT OF ACTUAL KNOWLEDGE OF PRESENCE OF PASSENGER—STATUS OF PLAINTIFF AS PASSENGER—FINDINGS.—In an action for personal injuries received by a jitney bus passenger while riding on the running-board from a collision with a standing truck, a finding that the defendant had no knowledge of the presence of the plaintiff is not inconsistent with a finding that plaintiff was a passenger.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge. Affirmed.

3. Duty and liability of operator of jitney bus to passengers, note, 4 A. L. R. 1500.

The facts are stated in the opinion of the court.

Duke Stone for Appellant.

Rosecrans & Emme for Respondent.

LAWLOR, J.—This is an appeal from a judgment for the plaintiff in an action for damages for injuries received by the plaintiff while riding on a Ford jitney bus. It is alleged that the accident was due to the negligence of the defendant in driving the bus, which he owned and operated. The case was tried by the court sitting without a jury. The facts are as follows:

Appellant operated the jitney bus in the streets of San Pedro, county of Los Angeles, carrying passengers for hire, The bus had an extended body, which was inclosed all around, the seats running lengthwise along the sides of the car. The driver's seat was at the front on the left side, and the only entrance to the bus was through the side, at the driver's right. There were no seats between the driver's seat and the entrance, which was open at all times.

On the morning of April 14, 1919, at about 6:45 A. M., appellant was driving the bus north on Beacon Street, in the city of San Pedro. He stopped at the intersection of Sixth and Beacon Streets to discharge and receive passengers. Respondent came from a restaurant across the street to board the bus, which had started and proceeded about eight or ten feet, when respondent swung on the right-hand running-board. All the seats in the bus were taken and passengers were standing up inside. One passenger was standing in the entrance. Respondent rode on the running-board, and at the time of the accident was holding on with his right hand and facing to the rear.

Appellant drove north on Beacon Street until he came to Fifth Street, where he turned east and proceeded along Fifth Street. While driving along Fifth Street he drove so close to a truck of the Union Ice Company, which was standing by the curb, that the fender of the truck struck respondent's left leg, cutting and bruising it, and wrenching his knee. No other injury was done, either to the passenger or to the bus.

1. The first point made by the appellant for reversal is that "Plaintiff was not a passenger for the reason that he was not upon the bus with the knowledge of the driver.". It is argued that "Until there is an acceptance, that is, until either within the express or implied *knowledge* of the carrier the person seeking to become a passenger has indicated his intention to become a passenger, which intention has been in some way acquiesced in, the relation of passenger and carrier does not arise even though the person attempting to become a passenger is to pay his fare when required." The finding is that respondent was a passenger for hire on the bus without the personal knowledge of.appellant, and the fact that appellant had no actual knowledge of his presence is not disputed.

[1] In the case of street-car transportation the relation of passenger and carrier may be established without the express knowledge of the carrier or employee in charge of the car. It was said in *Hatcher* v. *Quincy Horse Ry. & Carrying Co.*, 181 Ill. App. 30: "The stopping of a car at the customary place for the reception of passengers is an invitation to persons intending to become passengers to board the car *and is tantamount to an acceptance of such persons as passengers,* [italics ours] yet whether a person boarding such car does so for the purpose of becoming a passenger depends largely upon the intention of such person at the time of boarding such car. (*North Chicago St. R. Co.* v. *Williams,* 140 Ill. 288, [29 N. E. 672]; *West Chicago St. R. Co.* v. *Manning,* 170 Ill. 420, [48 N. E. 958].) There must be a *bona fide* intention on the part of such person to become a passenger or such a state of facts that the person will be a passenger if he gets on the car. (*Chicago & E. I. R. Co.* v. *Jennings,* 190 Ill. 484, [54 L. R. A. 827, 60 N. E. 818].)" It is said in Booth on Street Railways, section 326: "But it is not necessary that there should be an express contract to constitute the relation of passenger and carrier, nor that there should be a consummated contract. It may be implied from slight circumstances, and may arise before the payment of fare or entry into the car. The existence of the relation depends largely upon the intention of the person at the time he enters, or while attempting to enter." It follows, then, that one who boards a street-car at a regular stopping place becomes a passenger

whether or not the carrier actually knows of his presence on the car. In such a case knowledge is implied.

[2] But appellant also contends that because respondent boarded the bus after it was in motion he did not become a passenger. It is also said in Booth on Street Railways, *supra,* that a person "is not necessarily a trespasser after he boards a car, even if no fare has been collected from him before he suffers an injury, simply because he has violated a rule of the company as to the mode of getting on." It was declared in *Sharrer* v. *Paxson et al.,* 171 Pa. St. 26, [33 Atl. 120], where a passenger had jumped upon a moving train and secured a standing on the step of the car before he was pushed from the step by the brakeman and killed: "It is contended, however, that, inasmuch as the deceased reached the position from which he was pushed while the train was moving, his own negligence contributed to his death and is a bar to this action. The attempt to board a moving train is undoubtedly a negligent and hazardous act, but if it is successful and the negligent party gets safely upon the car it will not justify or excuse the subsequent negligence of the company or its servants, by which he is injured." Respondent in this case ran to catch the bus, and did get safely aboard before it had gone ten feet from its last regular stopping place. The fact that he boarded the bus just after it had started did not operate to preclude him from becoming a passenger. It is true he had not paid his fare, but the custom was to collect it at the end of the journey, and respondent testified he had the money for the fare and was ready and willing to pay. Appellant also contends that "the mere intention to go on board a car, which intention has not been by acts or otherwise indicated to the carrier, does not render the person a passenger although he may be entitled to transportation." However, in this case respondent had executed his intention to become a passenger; he had safely boarded the bus. In the light of the authorities we have discussed as to the implied knowledge by appellant of respondent's presence on the bus, it must be held this was a sufficient indication of respondent's intention to become a passenger. Nor is this conclusion affected by the circumstance that he was riding on the running-board. The rule is well settled that a person may be a passenger even though he is riding

on the steps of a car. (*Birmingham Ry., L. & P. Co.* v. *Bynum*, 139 Ala. 389, [36 South. 736]; *Sharrer* v. *Paxson et al., supra; Holloway* v. *Pasadena & Pacific Ry. Co.,* 130 Cal. 177, [62 Pac. 478]; *Seller* v. *Market Street Ry. Co.,* 139 Cal. 268, [72 Pac. 1006].) [3] Hence, notwithstanding that respondent got aboard the bus while it was in motion, that he had not paid his fare, that he rode on the running-board, and that appellant had no actual knowledge of his presence on the bus, he was none the less a passenger.

2. Appellant's next contention is that although respondent may have been a passenger, he was guilty of contributory negligence both as matter of law and as matter of fact, and that this negligence bars a recovery; that respondent's "negligence not only contributed or helped bring on the accident, but was the sole cause thereof because the evidence is uncontradicted that he would not have been injured except for the position assumed by him, without the knowledge of the driver."

Respondent testified there were so many people inside the bus he could not get in. He said: "Well, I got on myself. I went right in the entrance of the door and immediately the machine started. . . . Here is the running-board here, and here is the entrance. Then immediately when I got here he moved, started to go on to the north on Beacon Street, and then I kind of thought 'I will go in and get a seat.' At that time I seen I couldn't get in and I was standing right here by this post, holding by the arm. Q. You held on there, stood in that position? A. Yes. . . . Q. Did you get inside the jitney bus at all? A. Yes, I got right here—I couldn't get in. I say when I got in, immediately when I got into the entrance of the door the jitney started. . . . I got in here and the people was around here and I could see the conditions and I could not get in. I saw the driver and then I caught hold of that frame that holds up the jitney roof right with my hand." He further testified he was standing straight up facing the east, and continued: "Well, I think the jitney bus skidded right to one side, and hit me; the fender of the Union Ice truck hit my knee. It caught the fender of the Union Ice truck on my left leg." Four other passengers—Verne Ostendorf, John Dupic, M. Park Davies (appellant's son), and Richard Ireland —all testified they either saw respondent get on the running-

board, or saw him after he was there. They all, together with respondent himself, testified respondent was hanging on to the bus; Ireland and respondent testified he was holding on with his right hand. Dupic testified as follows: ".Q. Was Mr. Ivancich a passenger on the running-board at the time of the hitting? A. Yes, sir. Q. Was Mr. Ivancich's body swinging out?ff. A. No. sir. He was hanging on them there poles. Q. Did he have his arm around it? A. His arm. Q. Up close, or leaning out? A. Up close." He testified further: "Q. What part of the bus were you riding on? A. The first—from Fourteenth Street to Sixth Street I was on the running-board . . . At Sixth Street I got off there and tried to get in, and I got as far as the entrance . . . I went around that side to get a seat, but I could only get as far as the entrance . . . Q. But you were inside of the door? A. Yes. . . . Q. Everybody else had seats, didn't they? A. Yes. Most of them were standing up in the back. . . . Q. Standing up? A. Yes. Q. There was space then left in there, wasn't there? A. No, you couldn't get in. I could not get in any further when I got on at Sixth Street. I just had room to get in the doorway." The witness also testified that after the bus turned into Fifth Street respondent was facing the direction the bus was going. Appellant testified that there were passengers standing up right to the back of his seat, and there was one man standing in the entrance.

The court found that the bus was so crowded with passengers that respondent was unable to get a seat and therefore rode on the running-board, and that at the time of the accident respondent was riding on the running-board with his back toward the Union Ice truck; that it was the custom of appellant "to take passengers on the running-board of his jitney bus"; that the bus did not skid, but that the accident was caused through the negligence of appellant in driving so close to the truck that respondent's leg was caught between the bus and the truck; that the accident was not due to respondent's fault, carelessness, and neglect; "that it is not true that plaintiff negligently and carelessly placed himself in a position so that as said automobile passed near another automobile or truck the same was caused to come slightly in contact with the plaintiff, all without the knowledge, information, or consent of the defendant"; that

it is not true that defendant's bus had not stopped to take
on passengers when plaintiff attempted to board the same;
and "that it is not true that the plaintiff willfully, reck-
lessly, and secretly swung on the side of said automobile
causing his body to hang outside . . . and that he so con-
tinued in said position until he received the said injuries."

Appellant asserts that "Where there is standing room in-
side of a common carrier vehicle a passenger standing on
the platform, outside, is guilty of negligence as a matter of
law." [4] In view of the evidence as to the crowded
condition of the bus, and that respondent could not get
inside the entrance, it cannot be maintained that the mere
fact of his riding on the running-board constituted negli-
gence as matter of law. There is counter-evidence that
there was standing-room in the rear of the bus, but this only
raised a conflict which was resolved against appellant in the
finding already stated.

[5] Appellant contends, and cites numerous authorities
to the proposition, that "the protrusions of limbs of the
passenger, even to the minutest distance, will be regarded as
such contributory negligence as will deprive him of re-
covery"; that inasmuch as it is found that no damage was
done to the bus, respondent's body must have protruded
beyond the side of the bus, and that this was negligence as
matter of law, which caused the injury. We do not think
this deduction necessarily follows. One George Miller gave
testimony to the effect that the fender on the truck was
higher than the one on the bus; also, that it would have been
possible for the truck fender to have come in contact with
a passenger on the running-board of the bus without first
striking the fender thereof. The finding does not state
what part of the two machines came in contact with re-
spondent's leg, but from the finding of liability it cannot
be said that the trial court did not adopt respondent's
theory of the accident, that "the leg was hurt, not because
it was protruding out, but because the difference in the
height of the fenders of the two machines allowed the fender
of the bus to go under that of the ice truck, which naturally
caught the person on the running-board."

Appellant next claims that "it was the plain and unmis-
takable duty of the plaintiff to ride with his face in the di-
rection he was going, for by the slightest movement of his

leg he would have avoided the same object that the bus in which he was riding avoided.'' We are aware of no legal rule that a passenger must invariably face the direction the vehicle is going. **[6]** It is the duty of a passenger to use ordinary care, and whether in a given instance riding backward shows a want of ordinary care, must be determined by the circumstances of the case. We have heretofore referred to the finding that respondent at the time of the accident was riding with his back toward the ice truck, and in view of the conflict in the evidence on the point the finding must be accepted. There was evidence that respondent's right arm encircled the upright or post of the bus; that by this means he held himself ''up close,'' and that he was ''not swinging out'' nor ''leaning out.'' Respondent testified on cross-examination that he did not swing his leg out and that his attention was not ''engaged elsewhere'' as he went by the ice wagon; and that he was ''facing out'' when he was struck on the hip by the ice wagon. ''Q. Did you see the ice wagon before you were struck? A. Yes, I see the wagon before, 'of course I did. Q. How far were you from it when you saw it? A. I was no farther at all, because the ice wagon, you know, is long; probably ten or twelve feet; and then they are right close, you know; they get right close, just enough to hit my knee, the fender of the Union Ice truck.'' Since he was riding on the right-hand running-board, and holding on with his right arm, respondent's back would naturally be toward the front of the bus. Moreover, from respondent's testimony that he was ''facing out,'' the court may have concluded that he was looking to his left to see if the bus was coming close to any other vehicle. This is supported by the testimony that he saw the ice wagon before he was struck. If respondent was thus observant, the court might have regarded the position of his body as without any special significance. In any event, we cannot say from the evidence that the finding that the accident was caused through the negligence of appellant in driving too close to the ice wagon, or the implied finding that respondent did not show a want of ordinary care in the position he assumed on the running-board, cannot be sustained.

As already shown, in addition to appellant's contention that respondent was guilty of contributory negligence as

matter of law in the particulars we have discussed, he urges that as matter of fact respondent contributed to the injury and that the evidence is not sufficient to sustain the findings on that issue. We think that upon the evidence we have set forth the findings are amply supported. Although respondent got on the running-board while the bus was in motion, he was safely aboard before it turned into Fifth Street. There is evidence of such a crowded condition of the car as would justify him in remaining on the running-board. The testimony that he was holding on with his right arm and riding "up close" to the body of the bus—that he was "not swinging out" nor "leaning out," and that he did not swing his leg out, is not contradicted. It was also shown that the fender of the ice truck was high enough to have missed the fender of the bus and still have struck a passenger on the running-board. It will not be necessary to repeat what we have said about the direction he was facing when the collision occurred. The evidence abundantly supports the findings.

[7] 3. Appellant contends that certain findings of the court are inconsistent and that therefore the conclusions of law and the judgment cannot be sustained. He attributes inconsistency to the findings that appellant had no knowledge of respondent's position on the bus, and to the one that respondent was a passenger. As we have shown, it was not necessary in order to constitute respondent a passenger that appellant should have had actual knowledge of his presence on the bus. The point is without merit.

It is insisted that the finding that it is not true the bus had not stopped to take on passengers is inconsistent with the one that the bus had moved eight or ten feet before respondent got on. We perceive no inconsistency here, for considered in connection with another finding that "defendant stopped said jitney bus at the corner . . . and that the plaintiff got on the running-board . . . after it had gone about eight or ten feet from said corner," it is apparent that the meaning of the finding is that the bus had stopped for passengers, but that respondent did not get on until it had proceeded eight or ten feet.

The finding that respondent did not stand outside of the automobile willfully, recklessly, and secretly is claimed to be inconsistent with the finding that appellant did not know

respondent was on the bus, and that he was riding with his back in the direction the bus was going. But in view of our conclusion that actual knowledge of respondent's presence was not necessary, and that it was for the trial court to determine whether respondent showed a want of ordinary care in riding backward, these findings are not inconsistent.

Judgment affirmed.

Shaw, J., and Shurtleff, J., concurred.