J. Tracy Worden, Administrator, *vs.* Robert M. Anthony.

Third Judicial District, Bridgeport, October Term, 1924.
Wheeler, C. J., Beach, Curtis, Keeler and Kellogg, Js.

Upon an appeal from setting aside a verdict, the appellee waives objections to adverse rulings of the trial court (§ 5841 of the General Statutes) unless he brings them before this court by a bill of exceptions under § 5839.

The conduct of one who places himself in a position of danger is a proximate cause of a resulting accident, provided he knows or should know of his peril; otherwise such conduct is merely a condition of the accident.

In the present case the plaintiff's intestate, a boy of sixteen years, left the seat of a large coal-truck which was proceeding slowly along a heavily traveled highway, and climbed on to the left front fender to inves-

Worden *v.* Anthony.

tigate motor trouble, though cautioned by the driver that he might be struck by a passing vehicle. While in a reclining position with a portion of his body extending beyond the fender, he was brushed to the ground by the defendant's truck, which had turned out from beh'nd the coal-truck and had come into slight contact with it while endeavoring to pass it in time to avoid a collision with a car approaching from the opposite direction. The trial court set aside a verdict for the defendant. *Held:*—

1. That the trial court erred, since the jury could reasonably have found that the decedent's conduct, in view of the traffic conditions and the warning of the driver, constituted contributory negligence.
2. That the doctrine of the last-clear-chance was not applicable, in the absence of evidence that the operator of defendant's truck saw, or should have seen, the position of the decedent.

Argued November 12th—decided December 12th, 1924.

ACTION to recover damages for causing the death of the plaintiff's intestate by negligence, brought to the Superior Court in Fairfield County and tried to the jury before *Ells, J.;* verdict for the defendant which, upon motion of the plaintiff, the trial court set aside as contrary to the evidence, and from this decision the defendant appealed. *Error; judgment directed for defendant in conformity with verdict.*

*John F. Keating,* for the appellant (defendant).

*Robert R. Rosan,* for the appellee (plaintiff).

CURTIS, J. The trial court in its memorandum setting aside the verdict, states that it so acted because in its opinion, under the evidence, the jury could not reasonably have found that the defendant was free from negligence which was a proximate cause of the decedent's injury, and also because the jury could not reasonably have found that such negligence as the decedent was guilty of was a proximate cause of his injury; hence the verdict for the defendant could not reasonably have been rendered by the jury.

The evidential facts of the case are not seriously in controversy, but the contention between the parties arises on the legal consequences flowing from the facts.

The intestate was a boy sixteen years and four months of age, a student in a high school. He was a large, tall boy for his age, of good build. On July 9th, 1923, while on vacation, he went about two o'clock p. m. into a coal-yard at Cos Cob near his home. An automobile coal-truck owned by Edward Tammany, loaded with three tons of coal in bags, stood ready for delivery in Stamford. The truck was a two and one half ton Federal truck. It had a large heavy dump body six feet two inches in width, which projected out over the wheels, and the coal-bags were piled two high over the body of the truck. The front end of the truck was occupied by a cab with the driver's seat therein. The boy invited himself to go with the load of coal for a ride and got into the extreme right of the driver's seat, another boy sixteen years old sat in the middle, and the driver, Tammany, sat at the extreme left of the seat. The truck started to go east toward Stamford, and coming out of Cos Cob began to go up a steep long hill on the Boston post road known as Allen's Hill. The post road at this point is a heavily traveled road and is of warrenite about sixteen feet wide.

When the truck was nearly at the top of the hill, the engine began to act badly as if not receiving enough gasoline. The intestate, upon his own motion, got off the truck and passing around in front of the slowly moving truck got up and lay on the left fender and tried with his right hand to manipulate the air valve. There was no necessity for his doing so. He lay partly on his left side and stomach with his back to the line of traffic. The fender was ten and a half inches wide, and from its front it curved over the front wheel four feet and three inches to the point where it joined the

short running board, which was two feet long and had on its rear part a tool-box sixteen inches long and ten and a half inches high, the other eight inches being used as a step into the cab. On account of the height and size of the boy, some part of his body protruded beyond the outside and above the line of the fender. As soon as the driver saw the boy on the fender, he told him to get back into the cab or he would be hit by some passing vehicle. The boy refused to move. He continued in this position while the truck went ahead eight hundred and eighty feet, at a speed of about ten miles per hour. The defendant's empty Ford truck, driven by his employee, came up behind the coal-truck as it reached the top of Allen's Hill. As the coal-truck started down the opposite slope, the Ford came out from behind it and started to pass it on the left. When the Ford driver got well abreast of the coal-truck, he saw a car coming toward him from the opposite direction. He judged that he had ample time and space to pass in front of the coal-truck and out of the path of the oncoming car, and did so. After he came out from behind the wide body of the coal-truck, his attention was largely directed toward and occupied with the oncoming car in whose path he was, and he testified that he did not see the boy on the fender and did not know he was there. He passed to the front of the coal-truck and went on his way without knowing that anything had happened. The trucks did not come into severe contact, but in passing the Ford seems to have come slightly in contact with the coal-truck and some part of the protruding or extended body of the boy, brushed him up over the front fender on which he lay, causing him to fall down under the coal-truck and its right rear wheel ran over him and killed him.

The defendant does not seriously urge that the court did not properly rule that the jury could not reasonably

have found that his driver was not guilty of negligence which was a proximate cause of the injury. It is unnecessary to discuss that feature of the case.

The plaintiff claims that the jury could not reasonably have found that the plaintiff's intestate was guilty of any negligence which was a proximate cause of his injury. He claims that if his intestate was negligent in taking the position on the fender on this much traveled road, yet such negligence was not a proximate cause of the accident but merely a condition. The defendant claims that under the evidence the jury could reasonably have found that the intestate was negligent, and that such negligence was a proximate cause of the accident, and therefore that the jury properly rendered its verdict for the defendant.

In dealing with the claim that certain conduct of a party was a "condition" and not a "proximate cause" of an accident, caution must be observed. Conduct cannot readily be determined to have been merely a condition and not a proximate cause of an accident. 1 Jaggard on Torts, p. 64; Pollock on Torts (9th Ed.) p. 476, note(*o*); Bigelow on Torts (8th Ed.) p. 49.

*Southwick* v. *Hall & Upson*, 59 Conn. 261, 21 Atl. 924, and *Montambault* v. *Waterbury & Milldale Tramway Co.*, 98 Conn. 584, 120 Atl. 145, are cases where conduct of the plaintiff which was claimed to be contributory negligence, was held to be not negligence at all but merely a condition in the accident. The gist of these decisions was that the accident arose from a danger as to which the plaintiff had not been warned and which he could not reasonably be expected to anticipate, and hence he was not at fault in not avoiding the danger of which he neither actually nor constructively had knowledge. If the plaintiff in these cases had had actual or constructive knowledge of the danger which caused him harm, his taking the position which

he took would have been not only a condition of the accident but also a proximate cause. What duty rested upon the plaintiff's intestate as to taking the position that he did on the fender of the truck? The truck was being driven upon an important and greatly used portion of the Boston post road. The plaintiff's intestate was bound to exercise due care in placing himself in any position of possible danger on such a road. For the purposes of avoiding injury he was bound to exercise some degree of care with reference to what he knew to be the traffic of the roadway. *Hayden* v. *Fair Haven & W. R. Co.*, 76 Conn. 355, 362, 56 Atl. 613. "A man is required to use reasonable precautions in looking out for himself and his own." Foundations of Legal Liability, Street, Vol. 1, p. 124. "It is commonly the duty of every man to look after himself, and for injuries which he could have avoided by the use of due care," he can have no redress from the law. Salmond on Torts (6th Ed.) p. 34. "It . . . came to be admitted that an earlier tortfeasor is liable in cases where the commission of the subsequent unlawful or tortious act [by another] and the happening of the damage ought to have been foreseen by him as not unlikely to follow." This clearly refers to cases where the last-clear-chance rule does not obviate the earlier negligence. 25 Harvard Law Review, p. 121, article by Professor Jeremiah Smith. The classical cases of *Butterfield* v. *Forrester*, 11 East, 60, the pole in the street case, and *Davies* v. *Mann*, 10 M. & W. 546, the donkey case, show that the above statement of the law by Professor Smith was recognized in those early cases.

Under the evidence, the jury could reasonably have found that the plaintiff's intestate when he placed himself upon the fender of the truck negligently took a position of danger, and they could reasonably have found that the defendant negligently ran into or so close to

the coal-truck as to cause damage to the plaintiff's intestate. Could they reasonably have found that the negligence of the plaintiff's intestate was a proximate cause of the accident and consequent injury? It is to be borne in mind that the negligence of the intestate in continuing in the position of danger, is continuous active negligence down to the occurrence of the accident. "It may be observed that if a man places his person or property in a position of danger, or establishes a state of things which is or may be dangerous to others, his negligence in creating a source of danger to himself or others continues so long as that source of danger remains unremedied, that is to say, continues down to the very moment of the accident." Clerk & Lindsell on Torts (7th Ed.) p. 503; *Guilfoile* v. *Smith,* 97 Conn. 271, 116 Atl. 237. We are dealing, then, with concurrent acts of negligence, not with successive acts of negligence. The negligence of the plaintiff's intestate could reasonably have been found by the jury to have been the proximate cause of the injury to the intestate resulting from the accident. The last-clear-chance rule does not necessarily apply. The verdict should not therefore have been set aside.

The trial judge, in his memorandum of decision setting aside the verdict, stated as follows: "I further believe that I should have charged substantially as requested by the plaintiff in relation to the last-clear-chance rule and that the failure to do so may have been harmful to the plaintiff's rights." The evidence discloses that the driver of the Ford truck immediately before it swept the boy from the fender of the coal-truck, came from the rear to pass the high and wide dump body of the coal-truck on the left side, on a sixteen-foot roadway. The body of the coal-truck cut off his view as he was trying to pass. Another car from the east was approaching and his at-

tention was necessarily fixed upon this car, and upon the question of whether or not he had time to "cut in" ahead of the coal-truck. He would not naturally look to see if a person was lying on the left-hand fender of the coal-truck, and he testified that he did not see the boy. There is no evidence that he did see the boy, or evidence of any circumstances from which it could be reasonably inferred that he did see the boy, or ought to have seen the boy. Under these conditions a charge upon the last-clear-chance rule was not required.

Furthermore, the plaintiff requested a charge upon the last-clear-chance rule, and although it was not given, took no exception, as required by General Statutes, §§ 5839, 5841.

In view of the foregoing considerations, the remark of the court does not justify us in ordering a new trial.

There is error, and the Superior Court is directed to render judgment upon the verdict.

In this opinion the other judges concurred.