Felipe Neri Jorge et ux., Plaintiffs and Appellees, v. Carmen Umpierre et al., Defendants and Appellants.

No. 6488. Argued February 20, 1935.—Decided November 22, 1935.

R. *Castro Fernández* for appellants. R. *Cuevas Zequeira* and P. *Amado Rivera* for appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

William Jorge, a sixteen-year-old boy, while riding on the running board of a five-passenger Chevrolet automobile was struck by a Cadillac touring car and killed. The accident occurred on a long straight stretch of road between Santurce and a bathing beach known as Isla Verde. The Chevrolet carrying nine passengers was on its way to Isla Verde. The Cadillac was returning therefrom. The owner of the Chevrolet was in the car and Jorge, if not an invited guest, was, at least, a licensee. He had accompanied the owner of the car and his family on their daily excursion to the beach for about a week. There was testimony tending to show that the Cadillac, immediately before the accident, was traveling

at about forty miles an hour with an unobstructed view ahead, that on overtaking a pair of pedestrians traveling along the right hand side of the road, it swerved to the left without reducing its speed, and that the Chevrolet was moving in the opposite direction at ten or fifteen miles an hour well to the right of the center of the road when the boy was struck by the left front mud guard of the Cadillac.

■■ The first and second assignments are that the district court erred in finding that the driver of the Cadillac was guilty of negligence and in finding that Jorge was not guilty of contributory negligence.

From a Restatement of the Law of Torts as adopted and promulgated by the American Law Institute, sections 282, Comment f, 463 Comment b, we take the following definitions:

"In so far as risk is of importance in determining the existence of negligence, it is a chance of harm to others which the actor shall recognize at the time of his action or inaction."

"Negligence is conduct which creates an undue risk of harm to others. Contributory negligence is conduct which involves an undue risk of harm to the person who sustains it."

Professor Green in the Rationale of Proximate Cause, at pages 72–76, says:

"The judge having determined that the injured interest falls within the protection of the rule relied on, and that there is evidence requiring a submission of the case to the jury, will, under the orthodox practice of the common law direct the jury in substance what constitutes negligence by instructing them, in one form or another, that if the defendant as a reasonably prudent person should under the circumstances have foreseen as a result of his conduct probable harm to the interest involved, then defendant was negligent. This 'probability of harm' formula in varying degree of accuracy as it is actually submitted, constitutes the universal test of negligent conduct, except in those cases for which a definite standard has been set up, either by statute or decision. The court in this way attempts to give the jury a standard by which to measure the conduct under investigation. The foresight of the ordinarily prudent person as it

appears to the jury after the transaction is concluded is thus made use of as a negligence determinant. While the court by the use of this formula indicates to the jury a general standard of conduct for determining the quality of defendant's conduct, such standard is metaphysical. It has no certainty; it is in fact a fiction. While the jury are asked to determine whether the party's conduct measured up to that of the average man, they must first determine what that standard is. The court hands over this problem in the best way it can. It has no means of fixing the standard other than in the most general terms. The jury must give life to the standard. Hence, the jury are compelled to determine in a measure what is best for the social interest in every negligence case submitted to them. Here the weighing of interests, those of the parties, as well as those of society, must be considered much as the judge must do in exercising his first function as already indicated. The jury determines what is a just standard under all the circumstances. They can make the standard high or low. That is their function. They will make the standard high or low, depending upon their common sense, experience, intelligence and judgment. . . . Both the standard and the parties' compliance with it are thus determined after the conduct has taken place. The jury having no fixed basis of testing the conduct of the parties, must as best they can, put themselves in the position of the parties prior to the transaction involved, consider what each knew or should have known, consider what interest each should have contemplated as likely to be injured by his conduct alone and in connection with the conduct of others, or things, which might be reasonably expected, and considering all the interests which were likely to be involved, including those of the plaintiff, those of the defendant, as well as those of society in general, and looking at what was actually done by the parties and what has actually resulted from the combined action and reaction of the parties and outside factors, determine whether the conduct of the party sought to be charged was reasonable, i. e., in keeping with the standard they have set up under the judge's instructions. This is at best but a poor summation of what a jury may consider in their deliberations on such an issue. Thus it is in the consideration of this problem that the jury exercise their most important function and have their broadest range. It is here that they must determine whether the defendant shall bear the losses which have accrued, assuming that his conduct produced them, or whether it is best that

the plaintiff shall bear his own loss. The requirements necessary for making out this element of wrongdoing in a negligence case are sufficiently comprehensive to allow full play to all considerations which can enter into the reasonableness of conduct.

"It has already been observed that the jury's function in determining negligence, and the process by which such is done, are not altogether dissimilar from the judge's function and the process he must follow in determining whether the rule invoked is designed to protect the interest involved. But they are wholly distinct. The judge may and should consider all those factors in determining his primary problem which the jury consider in making their findings. But he may consider, and usually will consider, a great many more. The judge's function is altogether an excursion into the domain of policy; the process is the same as that required in determining whether there shall be a rule of law at all. On the other hand the jury's function is one primarily of fact finding. And it would be nothing more were it not for the impossibility which the court faces in supplying a comparatively definite standard of conduct as a yardstick for measuring the conduct in litigation. In other classes of cases the court is rather successful in giving a definite standard; in negligence cases at best the judge can only give an abstract formula which requires the jury to set up a standard in their own minds before they can perform their fact finding function. It is in setting up this standard that the jury exercise incidentally but in reality a lawmaking function. While this standard only serves for the particular case and cannot become a precedent for subsequent cases, yet in subsequent cases a jury must likewise in each of them supply a standard and this process must continue until such time as a definite standard of conduct is arrived at. When that is done in any particular line of cases, the judge will thereafter supply the jury with such standard and the jury's only function will be to determine whether defendant's conduct measures up to it. In one sense the law is made in each case after the transaction has been completed; a sort of ex post facto method."

As pointed out in Comment *a* on section 289 of the Restatement:

"The rules which determine the contributory negligence of a plaintiff are, with the exception stated in Section 463, Comment *a*, the same as those which determine the negligence of the defendant."

It may be conceded that if Jorge was negligent, his negligence was a substantial factor in the result and like the negligence of defendant, a proximate cause of the injury. See, however, *Godreau* v. *The American Railroad Co.*, 17 P.R.R. 760; *Almodóvar* v. *Acosta*, 43 P.R.R. 191; *Robinson* v. *American Ice Co.*, 141 Atl. 244; *Wilkerson* v. *Sanderson, infra; Stout* v. *Lewis et al., infra; Rignell* v. *Font*, (Cal.) *infra; Moreno* v. *Los Angeles Transfer Co.*, (Cal.) *infra; Ivancich* v. *Davies*, 186 Cal. 520; and *Dania Lumber & Supply Co.* v. *Senter, infra.*

Sections 12 (*a*), 12 (*d*) in part; and 13 (*a*) of "An Act to regulate the operation of motor vehicles in Puerto Rico, and for other purposes," (Session Laws 1916, p. 140) read as follows:

"Section 12.—(*a*) That persons operating motor vehicles on the public highway shall at all times exercise due care and take every reasonable precaution to insure the safety of persons and property.

"(*d*) Motor vehicles while being operated on the public highways shall be kept as far to the right as practicable. . . . On meeting pedestrians, persons mounted, or other vehicles, a motor vehicle shall always keep to the right.

"Section 13.—(*a*) The speed of motor vehicles shall at all times be regulated with due care and with due regard to the width, amount of traffic and use of the highway, but the driving at any time of any motor vehicle on the public highway at any rate of speed faster than forty-eight kilometers an hour, or within the urban zone of a municipality faster than twenty-four kilometers per hour shall be *prima facie* evidence that it was being driven without due care."

Section 18 makes the violation of any of the provisions of the act a misdemeanor.

The district court did not err in finding that defendant was guilty of negligence.

Riding on the running board of an automobile may or may not amount to negligence according to circumstances.

There was no law nor ordinance which prohibited riding on a running board of a motor vehicle. Hence, cases wherein

the violation of such an ordinance or law was involved may be put out of view. An extract from the opinion in a single case of the sort last mentioned will suffice to distinguish some of them from the case at bar. In *Lorry* v. *Englander Drayage Co.*, 291 Pac. 467, the court said:

"In the absence of the ordinance, the question of whether appellants were negligent in riding on the running board would depend upon whether a person of ordinary prudence would have so ridden under the circumstances then existing, and this would have been a question properly to be left to the jury. *Ivancich* v. *Davies*, 186 Cal. 520, 199 P. 784; *Strong* v. *Olsen*, 74 Cal. App. 518, 241 P. 107. But the ordinance enacted an absolute standard of conduct,. and removed from the jury the right to speculate as to what that ideal composite the man of ordinary prudence might or might not have done under similar circumstances. . . ."

Frequently the question turns upon the manner in which the riding is done, the more or less exposed position taken by the rider, rather than upon the mere fact that he was riding on the running board.

In *Fidelity Union Casualty Co.* v. *Carpenter*, 125 So. 504, one Gordy, while standing on the right hand running board of a Dodge automobile, was struck by a truck which backed out into the street from the curb where it had been parked at an angle of about 45 degrees. The Louisiana court said:

"It is perfectly clear that if Gordy had been inside the car, instead of on the running board, he would not have been injured. The district judge was of the opinion that it is negligence *per se* for one to ride on the running board of an automobile, and therefore, conceding that the truck driver was guilty of negligence, held that Gordy could not recover on account of his own contributory negligence. At the time of the accident, there was no ordinance of the city of West Monroe nor any statute of the state making it unlawful for one to ride on the running board of an automobile, and it has been repeatedly held in other jurisdictions that it is not negligence. *per se* for one to ride in that manner. Blashfield's Cyclopedia of Automobile Law, vol. 4, p. 134; *Hamilton* v. *Harrison*, 126 Kan. 188, 268 P. 119; *Anderson* v. *Detroit Motor Bus Co.*, 239 Mich. 390, 214 N. W. 172; *Rose* v. *Cartier*, 45 R. I. 150, 120 A. 581; *Gavin* v.

*Cohen,* 136 A. 330, 5 N. J. Misc. R. 296; *Koss v. A. Geo. Shulz Co.,* 195 Wisc. 243, 218 N. W. 175.

"In all of the above cases, it was held that it is not negligence *per se* for one to ride on the running board of an automobile, but that one may be negligent by assuming a dangerous position thereon, and that the question whether one so riding is negligent depends upon circumstances, and that the question of negligence is one for the jury or the trial court.

"It is conceivable that one may take such a position on a running board of a moving automobile as to be reasonably safe from outside traffic, yet if he permits his body to extend over and beyond the outer edges of the running board and the fenders, he exposes himself to the added risk of being struck by other cars. In other words, the position may or may not be dangerous and the question of negligence in each case must be determined according to the circumstances. The facts in this case are before us, and we think Gordy was riding in a negligent manner. He was standing on the running board holding to the top of the car with his left hand, his body swerving, we think, unnecessarily too far out. He says the upper part of his body was inside the car, but the testimony of other witnesses is to the contrary. A reading of all the testimony convinces us that if Gordy had not been so far out over the edge, he would not have been injured. Counsel say he was not negligent in the position which he took on the outside of the car, but he was negligent in not keeping a proper lookout and in not taking the proper precautions for his own safety."

Another example may be found in *Nugent v. Fair Haven & W. St. Ry. Co.,* 46 Atl. 875. There the Connecticut court as stated in the syllabus held that:

"Where a street railway was built along a causeway, which necessitated placing the trolley poles near the track, and defendant, who had knowledge of the situation, was riding on the footboard next to the trolley poles, and refused to step up on the platform at the invitation of the conductor, but leaned back to allow him to pass by, and struck his head against a trolley pole, plaintiff was entitled to nominal damages only on default, since he was guilty of contributory negligence."

In *Worden v. Anthony,* 126 Atl. 919, another Connecticut case, there was no controversy as to the facts:

"The intestate was a boy 16 years and 4 months of age, a student in a high school. He was a large, tall boy for his age, of good built. On July 9, 1923, while he was on vacation, he went, about 2 o'clock p. m., into a coal yard at Cos Cob near his home. An automobile coal truck, owned by Edward Tammany, loaded with 3 tons of coal in bags, stood ready for delivery in Stamford. The truck was a 2½-ton Federal truck. It had a large heavy dump body 6 feet 2 inches in width, which projected out over the wheels, and the coal bags were piled too high over the body of the truck. The front end of the truck was occupied by a cab with the driver's seat therein. The boy invited himself to go with the load of coal for a ride, and got into the extreme right of the driver's seat, and another boy 16 years old sat in the middle, and the driver. Tammany, sat at the extreme left of the seat. The truck started to go east toward Stamford, and coming out of Cos Cob began to go up a steep, long hill on the Boston post road, known as 'Allen's Hill'. The post road at this point is a heavily traveled road. The road is of warrenite, about 16 feet wide. When the truck was nearly at the top of the hill, the engine began to act badly, as if not receiving enough gasoline. The intestate, upon his own motion. got off the truck and, passing around in front of the slowly moving truck, got up and lay on the left fender and tried with his light (sic) hand to manipulate the air valve. There was no necessity for his doing so. He lay partly on his left side and stomach with his back to the line of traffic. The fender was 10½ inches wide; and from its front it curved over the front wheel 4 feet and 3 inches, to the point where it joined the short running board, which was 2 feet long and had on its rear part a tool box 16 inches long and 10½ inches high, the other 8 inches was used as a step into the cab. On account of the height and size of the boy, some part of his body protruded beyond the outside line of the fender, and above the line of the fender.

"As soon as the driver saw the boy on the fender, he told him to get back into the cab or he would be hit by some passing vehicle. The boy refused to move. He continued in this position while the truck went ahead 880 feet, at a speed of about 10 miles per hour. The defendant's empty Ford truck, driven by his employee, came up behind the coal truck as it reached the top of Allen's Hill. As the coal truck started down the opposite slope, the Ford came out from behind it and started to pass it on the left. When the Ford driver got well abreast of the coal truck, he saw a car coming to-

ward him from the opposite direction. He judged that he had ample time and space to pass in front of the coal truck and out of the path of the oncoming car, and did so. After he came out from behind the wide body of the coal truck, he had his attention largely directed toward and occupied with the oncoming car, in whose path he was, and testified that he did not see the boy on the fender and did not know he was there. He passed to the front of the coal truck and went on his way without knowing that anything had happened. The trucks did not come into severe contact, but, in passing, the Ford seems to have come slightly in contact with the coal truck and some part of the protruding or extended body of the boy, brushed him up over the front fender, on which he lay, causing him to fall down under the coal truck, and its right rear wheel ran over him and killed him.''

In *Hinch* v. *Elliott*, 175 Atl. 684, a third Connecticut case:

'' . . . The plaintiff, with her husband, his brother, and another woman, went from the brother's cottage, in an automobile owned by him, about ten miles to a beach to bathe. The car was a Chevrolet roadster, with a rumble seat. On the trip to the beach the women occupied the rumble seat. On the way back they sat upon the front of the car, one on each side. The plaintiff's evidence was to the effect that they sat between the fenders of the car and the hood, and that she had her feet on the front bumper, holding to a rod which connected the headlights. The trial court states in its memorandum of decision granting the motion to set the verdict aside, that the court and jury examined the car and that it was so constructed that the women could not have sat between the fenders and the hood, but must have sat upon the top of the fenders. Their purpose in taking such a position was to dry their hair. A portion of the route from the beach to the cottage was along the Boston Post road, a much traveled highway. The car went along this road, until just before the accident, at a speed of thirty-five to forty miles an hour. As it approached an intersecting road, the defendant's car coming in the opposite direction, turned without signal to enter this road, thus crossing the path of the car on which the plaintiff was riding. The driver of the latter car applied his brakes and turned to the left, but the right front wheel of his car collided with the left rear wheel of that of the defendant. Neither car was overturned and the two men, sitting in the front seat of the roadster, were not thrown out and suffered no serious injury. The women were thrown off the car and both hurt.''

See also *Ivancich* v. *Davies, supra; Guilfiole* v. *Smith,* 116 Atl. 237, and *Shaw* v. *Moore,* 162 Atl. 373.

In the instant case the testimony for plaintiffs tended to show: That just in front of the left fore-door of the Chevrolet there was a spare tire carrier but no spare tire; that Jorge was squatting on the left hand running board in the space which would have been occupied by the spare tire with one foot braced against the tire carrier or against one of its supports, his back against the left front mud guard and grasping with one hand a lamp or a lamp bracket attached to the side of the car near the wind-shield; that no part of his body extended beyond the line of travel of the car on which he was riding; that the body and mud guards of the Cadillac, a 1926 model, were built at a higher level than the body and mud guards of the Chevrolet; and that Jorge when struck by the left front mud guard of the Cadillac, or immediately thereafter, was crushed between the mud guard and the foredoor of the Chevrolet.

There was nothing to indicate whether Jorge was large or small, of robust or slender build. There was nothing to indicate the width of the running board nor the width of the empty tire carrier nor the width of the front mud guard of the Chevrolet. In other words, there were no actual measurements either to corroborate or to contradict the testimony for plaintiffs to the effect that no part of Jorge's body projected beyond the Chevrolet's line of travel.

It may be conceded that if Jorge had been riding, even in the manner described by witnesses for plaintiffs, on the running board of a car in a congested city street or in heavy traffic, he would have been guilty of negligence. In the instant case there was nothing to show that the danger due to traffic conditions was either imminent or obvious.

Appellants insist that the road was narrow at the point where the accident occurred and that Jorge knew this because he had frequently visited Isla Verde. The only evi-

dence going to the question of Jorge's knowledge as to the width of the road was the testimony of one witness to the effect that Jorge had traveled over the same road daily during the week preceding the accident. The same witness admitted that the road was "narrow enough," but added that there was ample room for cars to pass each other without difficulty. Another witness said that the road was wide enough for two cars to pass each other even at reasonably high speed with space to spare. A third witness testified that he traveled daily over the road in a horse-drawn vehicle and that there was room for two cars. The principal witness for defendant stated on cross examination: That the road was wide enough; that she lived in Río Piedras and knew that part of the *carretera* in front of the University; that the *carretera* was wider at that point; that it was wide; that the Isla Verde road was not as wide as the *carretera* in front of the University; and that the width of the Isla Verde road was very little less than that of the *carretera* in front of the University. Other testimony for the defense tended to show that the road at the place where the accident occurred was wide enough to accommodate three automobiles abreast.

The most that can be said of such testimony is that it might furnish debatable ground in a jury room as to whether (aside from other hazards which for the time being may be put out of view) a reasonably prudent man would have ventured to ride over such a road on the running board of an automobile in a position which would enable him to keep all parts of his body within the boundaries of the space covered by the automobile in its line of travel. Assuming, as appellants assume in the second assignment, that the district court found Jorge not guilty of contributory negligence, there is not, either in the testimony concerning the width of the road nor elsewhere in the evidence adduced at the trial enough to justify this court in overturning that finding. Additional

support for this conclusion might be found in other considerations.

We shall not stop here to speculate upon any analogy that may be found in section 473 of the Restatement. In Comment *c*, however, we find that: "When the plaintiff has a right to find the conditions safe, he may take a greater risk than when he has merely a privilege which is not protected by a right."

Section 468 of the Restatement and Comments *a* and *b* (omitting illustrations) read as follows:

"Section 468. Harm not resulting from hazard which makes plaintiff's conduct negligent.

"The fact that the plaintiff has failed to exercise reasonable care for his own safety does not bar recovery unless the plaintiff's harm results from a hazard because of which his conduct was negligent.

"*Comment:*

"(*a*) The rule stated in this Section applies to the plaintiff's responsibility for his own carelessness, the same rule which is applied in *Comment e* on Section 281, to the determination of the responsibility of a negligent defendant for harm resulting to a plaintiff. Therefore, one whose act is negligent only because it should be recognized as likely to subject him to a particular hazard is not, as plaintiff, barred from recovery for an injury which results otherwise than from his exposure to this hazard.

"* * * * * * *

"(*b*) The rule stated in this Section is applicable when the plaintiff's conduct is negligent only because of its tendency to expose him to some particular type or types of hazards. There are many acts and omissions which are negligent because of their generally dangerous character and not because of their tendency to create any particular hazard or hazards. The rule stated in this Section does not apply when the plaintiff's negligence is of this latter kind."

In *Powers* v. *City of Boston*, 154 Mass. 60, 61—

"The plaintiff at the time of the accident stood upon the running board of an open car collecting fares, and, his person, which he allowed to project beyond the outer edge of the board, coming in contact with the barrier, which was placed within two inches of such

outer edge, he was knocked off and sustained the injuries in question.''

The court, speaking through Mr. Justice Holmes, at page 63 said:

'' . . . No doubt, if a man voluntarily runs into a danger which he fully appreciates, in common cases he cannot recover for it, and it is rather a question of words than of substance whether he shall be called negligent, or shall be said to have taken the risk. . . . But a man does not take the risk of every danger which may arise from certain causes merely because, in a general way, he is aware of the existence of those causes. . . . ''

In *Vandell* v. *Sanders,* 80 A.L.R. 550, the Supreme Court of New Hampshire held as stated in the headnotes:

''1. One invited by the driver of an automobile to ride is not guilty of contributory negligence as a matter of law in standing on the running board.

''2. Assumption of risk is not a defense in an action for injuries by one thrown from the running board of an automobile on which he was riding at the driver's invitation when the latter made a sharp turn at considerable speed.''

By way of anticipating a possible objection that the instant case is not an action against the owner of the car upon which Jorge was riding, we may note in passing that the Massachusetts court in the *Powers* case also said:

''So far as the request for a ruling that the plaintiff was negligent was put upon the ground that he was standing on the running-board and allowed his person to project beyond the outer edge of the board, there can be no doubt, we think, that the question would be left to the jury in an action against the railroad company. *Meesel* v. *Lynn & Boston Railroad,* 8 Allen, 234, *Fleck* v. *Union Railway,* 134 Mass. 480; *City Railway* v. *Lee,* 21 Vroom, 435; *Geitz* v. *Milwakee City Railway,* 72 Wis. 307; *Dahlberg* v. *Minneapolis Street Railway,* 32 Minn. 404; *Dickinson* v. *Port Huron & Northwestern Railway,* 53 Mich. 43; *Germantown Passenger Railway* v. *Walling,* 97 Penn. St. 55; *West Philadelphia Passenger Railway* v. *Gallagher,* 108 Penn. St. 524, 528. It is true that in such an action the plaintiff has the advantage that the defendant invited the con-

duct which it now alleges to have been negligent, but the reasoning of the cases is not wholly dependent upon this fact, and the same conclusion has been reached in actions against third persons in cases of collision. *Spofford* v. *Harlow*, 3 Allen, 176; *Connolly* v. *Knickerbocker Ice Co.*, 114 N. Y. 104.''

In *Wright* v. *Foreman*, 86 Cal. App. 595, the California court held, as stated in the syllabus, that—

''Under ordinary circumstances a pedestrian crossing at a street intersection is not required to anticipate that the driver of an automobile over a congested city street will overlap the center of the street and proceed upon the wrong side of the street, but, in the exercise of ordinary care, has the right to assume that the driver under such circumstances will conform to the customary traffic laws.''

In *Rignell* v. *Font*, 266 Pac. 588, a California District Court of Appeals said:

'' . . . In the exercise of ordinary care, a pedestrian may rely upon the expectation that automobiles will conform to the customary rules of traffic and travel only upon the proper side of a street. . . ''

In *Wilkerson* v. *Sanderson*, 26 S.W. (2d) 1—

''The appellee, Ocie Sanderson, with a number of other workmen engaged in highway construction, after dark on the evening of October 8, 1928, were returning to their homes in Mayfield on a truck having a cab and a flat body or platform with standards or upright pieces along the edge. The floor of the car extended over the wheels in the rear, and the appellee and others were sitting on it with their feet hanging down. A Chevrolet coach going in the opposite direction, and driven by the appellant, C. K. Wilkerson, while passing the truck on or near Possum Creek bridge, struck appellee's foot, breaking his left leg in two places, twisting his ankle, and injuring his right kneecap. Two other men sitting between the appellee and the rear end were knocked from the truck. Sanderson was sitting astride· one of the standards, which no doubt kept him from being swept off, and which also probably accounts for the severity of his injuries. Those men sitting nearer to the front of the truck were not struck, nor did any part of the truck show evidence of contact. There were some dents made in the appellant's fender, the handle was broken off the door, and marks made on its side.''

The Kentucky Court of Appeals said:

" . . . There is no law against riding this way. Because a portion of plaintiff's body extended beyond the edge of the truck, the defendant had no right to run into him and was not relieved of his duty to exercise ordinary care to avoid injuring him. Sanderson was justified in assuming that appellant and all others would not violate the law of the road by failing to maintain a lookout and to keep to the right without turning or swerving back into or toward the center of the road until it was safe to do so."

In *Stout* v. *Lewis, et al.,* 123 So. 346, the Supreme Court of Louisiana, at pages 347 and 348, said:

"That plaintiff was guilty of negligence in assuming a position on the running board of defendant's car in violation of the city ordinance cannot be gainsaid, and it might be said that were it not for his negligence in riding upon the running board, the collision with the Lewis car, though due to the negligent operation of the Hahn car, would not have caused the injury of which he complains. In other words, if he had been inside of the car the collision was not sufficiently violent to have injured him.

"A superficial consideration of the subject would lead us to this result. Indeed, our first impression of plaintiff's conduct was fatal to his recovery, being largely influenced by the perilous position voluntarily assumed by him in violation of the traffic ordinance, but, upon reflection, we are convinced of the error of this view.

"The negligence of the plaintiff in this case, as affecting his right to recover, his contributory negligence involved the assumption of the risk and peril incident thereto. He assumed the risk of his dangerous position. If it may be said that his injuries were the natural consequences of the risk he assumed, he cannot recover.

"It is not sufficient to say that he would not have been hurt, if he had not been on the running board, because he might have remained upon the running board until he had reached his destination without injury, but for the negligent management of the car, on the running board of which he was riding; a risk which he did not assume."

See also *Cosse* v. *Ballay,* 149 So. 285.

From the headnotes to *Moreno* v. *Los Angeles Transfer Co.,* 186 Pac. 800, we take the following paragraphs:

"Plaintiff, sitting on a steam roller with his feet hanging down the side, was not guilty of contributory negligence in failing to keep a lookout to the rear, since he might assume that a truck overtaking and attempting to pass the steam roller would keep sufficiently to the left to clear it as required by the Motor Vehicle Act.

"Contributory negligence cannot be predicated upon an omission to assume that another will violate the law."

In *Piatek* v. *Swindell,* 151 Atl. 262, the pertinent facts are summarized in the first paragraph of the headnotes as follows:

"Plaintiff was sitting on the floor of the cab of the truck with his right leg hanging out of the cab and his right foot resting on the right-hand running board. There was no room for him on the seat of the cab. When the truck reached an intersection, he saw defendant's car at some distance away, and, judging by the distance, and assuming that defendant's speed was not excessive, he thought that the truck would leave the intersection before defendant reached it."

The Supreme Court of New Hampshire said in part:

"If it may be said that the plaintiff was careless to sit in such a position as he did, it was because of dangers likely to be encountered. And if in his position he took proper precautions and kept reasonable watch against such dangers, he is not to be held careless because he did not look out for dangers he had no occasion to anticipate. There is no carelessness in encountering dangers not reasonably to be sensed and not in fact known. . . . If his position was careless, it was not so in his relationship with the defendant, from whom no menace was indicated.

"It is not negligent for one to assume that another will do his duty when there is no occasion to assume otherwise, and the plaintiff's position was analogous to that of a pedestrian who in crossing a street is not required to be on the lookout for trouble not reasonably to be anticipated. *McCarthy* v. *Souther,* 83 N. H. 29, 32, 137 A. 445. . . .

"The argument is made that the plaintiff was negligent because he needlessly encountered a known danger. The argument is defective in respect both to fact and to law. As already appears, the danger was unknown to the plaintiff, or at least might be found one not to be reckoned for so as to put him in fault for failure to

appreciate it. And incurrence of a known danger is not the legal equivalent of negligence. *Prichard* v. *Boscawen*, 78 N. H. 131, 133, 97 A. 563, and cases cited; *Hussey* v. *Railroad*, 82 N. H. 236, 241, 242, 133 A. 9; *Owen* v. *Hospital*, 82 N. H. 497, 499, 136 Atl. 133.''

See also *Dania Lumber & Supply Co.* v. *Senter,* 152 So. 2.

The foregoing cases are mere illustrations of the general rule as laid down in 42 C. J. 1136, section 909, in part as follows:

''Under the rule that the rights of all persons using the public highways are reciprocal, any person on the highway has the right to assume, in the absence of knowledge or notice to the contrary, that others using it in common with him will use ordinary care to avoid injuring him, and he may assume that they will conform to and not violate the statutes or ordinances and the rules of the road, and he is not guilty of contributory negligence in acting upon such assumption; . . . ''

This, of course, is but one aspect of the more general statement in 45 C. J. 954, section 512, namely that:

''In the absence of contrary knowledge, actual or imputed, a person may assume that he is not exposed to, or threatened by, danger which can come to him only from a breach of the duty which others owe to avoid injury to him. Thus one may assume that all precautions required of others for his protection from injury have been or will be taken, whether the duty to take such precautions arose from the common-law duty to exercise ordinary care to avoid injury to others, or whether it arose from rule or custom, the relations of the parties, contract, ownership, and control of property, or by force of statute or ordinance. In other words, he is not bound to anticipate negligent acts or omissions on the part of others. This, it has been held, is true, even though he places his person or property in an exposed or hazardous position.''

By the same token the instant case comes, we think, within the rule of section 468, *supra,* of the Restatement rather than within the exception. Our investigation of this aspect of the case, however, has been without the aid of counsel and of necessity somewhat superficial. At least one quite recent case (*Hinch* v. *Elliott, supra*), although distinguishable on

the facts, indicates the debatable character of this question. No doubt, a number of others may be found. In the meanwhile, without prejudice to further discussion in future cases, our conclusion is that in the instant case the risk of being struck by a passing automobile was not one of the hazards, not one of the imminent and obvious dangers, which Jorge, as a reasonably prudent man, was required to anticipate and consider before taking his position on the running board.

If the road had been asphalted and if the Chevrolet on a rainy afternoon had skidded on the wet asphalt toward the center of the road when the Cadillac swerved to its left, if Jorge had been bounced from his seat as the result of some unevenness in the surface of the road and had fallen in the path of the Cadillac, or if he had been thrown from the running board on the swerving of the Chevrolet, first to the left and then to the right, in passing some other vehicle, just before meeting the Cadillac, and if the Cadillac had passed over his body, then it might be said that these results incident to the ordinary operation of the car on which Jorge was riding might have been foreseen and would have been foreseen by any reasonably prudent man. Jorge could not have foreseen, save by anticipation of careless driving, that while on the running board, in the position already indicated, he would be struck by a passing car. As far as that risk was concerned, Jorge's position, barring the possibility of negligence on the part of the driver of the car in which he was riding, was safe enough until made perilous by the sudden swerving of the Cadillac toward and accross the center of the road. The statutory provisions which regulate the operation of motor vehicles were enacted for the benefit and for the protection of the traveling public. We see no reason why Jorge, as one of the traveling public, should be deemed to have placed himself beyond the pale of the law and of the law's protection merely because at the time of the accident he was riding on the running board of an automobile in the

manner and in the circumstances disclosed by the evidence in the instant case.

The district judge, in the course of his statement and opinion, said that the Chevrolet stopped immediately after the accident within two meters of where Jorge lay while the Cadillac stopped some 20 meters from the spot, which showed that it was traveling at a high rate of speed. This is assigned as error.

The argument is: That in *Efret* v. *Quiñones,* 40 P.R.R. 183, cited by the district judge, the facts were different; that in the instant case Jorge's body struck the left rear mud guard of the Cadillac, which shows that the driver of the Cadillac did not see the accident and did not know what had happened; that the testimony of the Cadillac driver's sister was to the same effect; that if Jorge was crushed against the body of the Chevrolet the logical inference is that the Chevrolet carried the body some meters beyond the scene of the accident, especially in view of the fact that Jorge was holding fast to the Chevrolet; that the cocoanut wagon on which Jesús García, a witness for plaintiffs, was riding, was at the time 10 meters from the scene of the accident and García, who was seated on the rear of the wagon, did not jump to the ground, all of which shows that the Cadillac stopped within much less than 10 meters of the spot where the accident occurred; and that if Jorge's body lay 20 meters from where the Cadillac stopped, and two meters from the Chevrolet, then the Chevrolet must have travelled more than 10 meters after the accident with Jorge on the running board.

The fact that *Efret* v. *Quiñones, supra,* is distinguishable from the case at bar is not a controlling factor. The fact that Jorge's body struck the left rear mud guard of the Cadillac after he had been struck by the left front mud guard of the Cadillac and crushed against the door of the Chevrolet does not show that the driver of the Cadillac was unaware of what had occurred. The sister's testimony points

clearly to a contrary conclusion. The fact that Jorge's body struck the left rear mud guard of the Cadillac making an indentation therein some fourteen inches above the running board after he had been crushed against the door of the Chevrolet by the left front mud guard of the Cadillac does not tend to show that the body was carried forward by the Chevrolet on its running board but strongly negatives that idea. There is nothing to show that he continued to grasp the bracket of the side lamp after his body was struck and crushed by the left front mud guard of the Cadillac. The manner in which he was struck and crushed renders any such theory utterly untenable. The premises upon which appellants attempt to base their final conclusion is equally false. When the Cadillac came to a stop, the cocoanut wagon was not within 10 meters nor within 20 meters of the spot where the accident occurred.

 From the statement of the case and opinion filed by the district judge, we take the following paragraph:

"Moreover, it has been shown that immediately after the accident the child was picked up by the chauffeur of the Chevrolet and taken to the hospital where he died, but that before doing so the said chauffeur went up to Mrs. Umpierre and accused her, making her responsible for the accident and asking her to pick up the victim, which she refused. The latter also failed to appear at the trial or to explain at all her failure to testify, she being the person driving the Cadillac automobile, which caused the injury, and an interested party in the investigation of the truth. *Fajardo et al.* v. *Tió,* 17 P.R.R. 230. On the other hand, the answer appears verified by defendant Salvador Quiñones, who states that he knows the facts therein alleged of his own knowledge, whereas according to the evidence he was not at the place of the accident when it occurred."

The comment on the failure of the Cadillac's driver, who was also one of the defendants, to take the stand is assigned as error. The circumstances indicated in the context, in addition to all the other facts disclosed at the trial, bring the instant case, we think, within the principle of *Fajardo et al.* v. *Tió,* 17 P.R.R. 230, cited by the district judge rather than

that of *Banco Territorial y Agrícola* v. *Vergne*, 43 P.R.R. 909, relied on by appellants. In any event, the error, if any, could hardly be regarded as reversible error.

The fifth assignment is that the district court erred in admitting evidence as to the mental and physical suffering of plaintiffs. The only authority cited in this connection is *American Railroad* v. *Santiago*, 9 Fed. (2d) 753, already discussed by this court in *Orta* v. *Porto Rico Railway, Lt. & P. Co.*, 36 P.R.R. 668, and *Carbou* v. *Mir*, 36 P.R.R. 728. Appellants do not question the conclusion reached in *Orta* v. *Porto Rico Railway, Lt. & P. Co.*, and *Carbou* v. *Mir, supra*, although the district judge cited the *Orta* case in his statement of the case and opinion. We need not now repeat what was said in those two cases.

In view of the debatable character of the question as to contributory negligence, we are inclined to agree with appellants that they should not have been mulcted in costs.

As far as the pronouncement awarding costs to plaintiffs is concerned, the judgment will be reversed. In all other respects it will be affirmed.