[Civ. No. 8074. Second Appellate District, Division Two.—December 7, 1933.]

JENNIE HELLMAN, Respondent, v. LOS ANGELES RAILWAY CORPORATION (a Corporation), Appellant.

Gibson, Dunn & Crutcher and Philip C. Sterry for Appellant.

Kemper Campbell and Chas. L. Nichols for Respondent.

ARCHBALD, J., *pro tem.*—From a judgment in favor of plaintiff defendant has appealed.

On August 10, 1929, plaintiff was injured, as the original complaint alleges, by the negligent starting of one of defendant's street-cars after "intending in good faith to become a passenger", she had "grasped the upright handrail at the rear entrance way and placed one foot on the bottom step . . . and before plaintiff could take any precaution to protect herself". Such specific act of negligence is the only negligence alleged in the original complaint.

At the trial, on November 30, 1930, more than a year after the accident, plaintiff filed an amended complaint, setting up in the first count thereof a general allegation of negligence, viz.: "that at said time defendant, through its agents and employees aforesaid, carelessly and negligently, and in violation of its duty toward plaintiff, operated said street car and thereby caused plaintiff to sustain the injuries hereinafter set forth", followed by the allegation of the specific act of negligence set forth in the original complaint. A second cause of action following the language of the first cause of action included such general allegation of negligence, but instead of the specific allegation of negligence in starting the car prematurely as the sole cause of plaintiff's injury, it alleged as the proximate cause of such injury such negligent starting combined with the act of the conductor, who "negligently and carelessly took hold of plaintiff and jerked plaintiff up the steps of said car and onto the rear platform thereof", after she had so grasped the handrail and placed one foot on the lower step.

Defendant's demurrer to such amended complaint, filed simultaneously with its answer, was overruled. Both the

demurrer and the answer raised the bar of the statute of limitations as a defense to such second cause of action. Appellant urges that the court erred (1) in overruling the demurrer, (2) in denying its motion for a nonsuit as well as a directed verdict, and (3) in its instructions to the jury.

■ (1) Appellant urges that the second cause of action set forth in the amended complaint is a new and distinct cause of action barred by the statute.

The "cause of action is simply the obligation sought to be enforced". (*Frost* v. *Witter*, 132 Cal. 421, 426 [64 Pac. 705, 84 Am. St. Rep. 53].) Appellant urges that the obligation sought to be enforced in the original complaint and the first cause of action in the amended complaint was the duty of defendant to keep the car standing until plaintiff entered the same, and in the second, it was the duty of defendant to have its conductor assist her in a careful and prudent manner, and inasmuch as the latter is a different obligation not alleged within the statutory period the demurrer should have been sustained. In our opinion appellant is taking too limited a view of defendant's real obligation, which we think was to protect plaintiff from the negligence of itself or employees while she was boarding the car as a passenger.

The act of the conductor followed immediately and because of that of the motorman, and plaintiff's primary right to have conditions safe for her in reaching the platform after stepping on the first step when the car was allegedly standing still and defendant's concurrent duty to protect her while so doing should not be limited because in the first instance she alleged but one breach of such duty. The two acts were but different invasions of her primary right and different breaches of the same duty. There was but one injury and it was immaterial whether it resulted from the negligence of the motorman or of the conductor. In either case it was a violation of the same obligation.

■ (2) Appellant urges that the evidence is insufficient to sustain the verdict and that its motion for nonsuit and a directed verdict should have been granted.

Plaintiff testified that she first saw defendant's car as it approached the safety zone for passengers, as she was crossing the street; that when she entered the zone the car was standing "at the end of the zone where it stops. It had come to a complete stop. I walked right in front of the

car and then walked into the safety zone to the back of the car. I walked alongside the car and observed two ladies getting on the car. . . . The car was standing there and I got on the first step. I got on with my right foot and then stepped on with the left foot and as I did so the car gave a kind of a lurch and by that time the conductor saw me and grabbed me under the arm and pulled me up. . . . I couldn't say positively it was the sudden starting of the car or pulling me up that threw me so quick. . . . The conductor pulled me up bodily and hit my leg—I don't know whether against the railing or the step. . . . The first time I noticed pain was when I got on the platform." This evidence would seem to make a *prima facie* case under the allegations of the complaint, which placed plaintiff on the lower step before either alleged act of negligence occurred. Of course, we have omitted all evidence conflicting therewith.

██ The power of the court to direct a verdict and grant a motion for nonsuit is the same. Conflicting evidence must be disregarded and plaintiff's evidence must be given "all the value to which it is legally entitled, herein indulging in every legitimate inference that may be drawn from that evidence". (*Estate of Lances,* 216 Cal. 397 [14 Pac. (2d) 768].) ██ Applying that rule to plaintiff's evidence here, we are forced to conclude that the court committed no error in denying such motion and in refusing to direct a verdict in defendant's favor.

██ (3) Appellant urges that plaintiff's instruction No. II is erroneous in charging that "it is admitted by the pleadings in this action that plaintiff boarded the said street car at a regular stopping place, with a *bona fide* intention of becoming a passenger thereon", for the reason that appellant alleged and strenuously contended that plaintiff boarded the car after it was placed in motion. The language quoted has reference to the "stopping place" only, not to plaintiff's manner of boarding the car or as to whether or not the car was in motion. The remaining part of the instruction states, however, that "if you find from all the evidence in this case that plaintiff did board said car *before it was set in motion by defendant,* then you must find that plaintiff was a passenger on said car and this is true regardless of whether or not defendant or its employees actually knew of her presence on the car". (Italics ours.)

Appellant urges that such instruction, with plaintiff's instructions III, IV, V and VI, relative to the degree of care due from a carrier of passengers for hire toward such passengers, advised the jury that plaintiff was a passenger and that defendant was liable for the slightest negligence. Instruction II, however, is based upon the hypothesis that the "boarding" referred to was prior to the time the car was set in motion by defendant, and we fail to see how, taking the instructions as a whole, the jury could possibly have been confused. Instruction IV refers to the care to be exercised in the "safe carriage of passengers" and the responsibility "for injuries received by a passenger *while in the course of transportation*", and in connection with instruction No. II, which advised the jurors that if they find that plaintiff boarded said car before it was set in motion, they must find she was a passenger regardless of whether or not defendant knew of her presence in the car, there would seem to be no possibility of applying such instruction to an attempted boarding of such car while it was in motion. Defendant's instruction C, given by the court, told the jury that a passenger who attempts to board a moving car assumes all the risks thereof and cannot recover for injuries sustained thereby. Defendant's instructions D, E and H set out clearly the claim of plaintiff that she boarded the car when it was standing still and that it was thereafter suddenly started, and that the burden was on plaintiff to prove such facts and that as a result thereof she was injured, and that she could not recover unless she proved such facts, and on the other hand, that if they found that the car was in motion when plaintiff attempted to board same, and was so injured, that she could not recover and that they must find for defendant. Plaintiff's instruction No. I also clearly sets forth the issue raised by the complaint to be that the "car was not in motion" when plaintiff undertook to board same and that it was negligently started thereafter, injuring plaintiff, and that the defense was that the car was started before plaintiff attempted to board it, and the injury was caused by her own negligence. In our opinion such instructions leave the question of whether or not plaintiff was a passenger to the jury, and do not instruct them that plaintiff was a passenger. ■ The first paragraph of plaintiff's instruction No. V tells the jury that it was defendant's

duty to hold the car a sufficient length of time to enable passengers desiring to do so to board said car in safety, and in and of itself might convey the idea to the jury that defendant was negligent if it started the car before plaintiff attempted to board it. We think no such conclusion could be reached by the jury, however, considering all the instructions, and the balance of such instruction No. V, which advises the jury that if they find from all the evidence *"that the defendant started the car while plaintiff, as a passenger, was on the steps of the car and in the act of boarding it,* without giving her sufficient time to reach a place of safety", and that plaintiff was injured as a result thereof, that then they must find defendant guilty of negligence. ■ In view of all of the instructions we do not believe that the jury could have misunderstood the reference in plaintiff's instruction No. VII, to "the act of boarding the car" to refer to anything excepting the acts of plaintiff *after she had reached the lower steps of the car before it was in motion.*

■ The acceptance of a person by the carrier as a passenger is, of course, necessary to create such relationship but such acceptance does not have to be expressed; it may be implied. "One who boards a street car at a regular stopping place becomes a passenger whether or not the carrier actually knows of his presence in the car. In such a case knowledge is implied." (*Ivancich* v. *Davies,* 186 Cal. 520, 523 [199 Pac. 784, 786].) In the cited case, the plaintiff jumped onto the running-board of a jitney bus after it had started and gone from ten to fifteen feet past its stopping place. The driver did not see plaintiff, who was injured by the negligence of the driver in passing too close to a truck standing at the curb. He was held to be a passenger notwithstanding the fact that he boarded the bus while it was in motion, that he rode on the running-board, had not paid his fare, and the driver had no actual knowledge of his presence on the bus. Here plaintiff boarded the car while it was at a regular stopping place, and according to her testimony while it was *standing* there. If the jury believed her testimony it had a right to find that she was a passenger.

■ Appellant urges that the court erred in giving plaintiff's instructions VIII and XI. Instruction No. VIII in effect tells the jury that it was the duty of appellant to

afford a reasonable time for plaintiff to board its car because it was a place where cars stop for such purpose and the car was caused to stop there for that purpose, and then says, "and if you find from all the evidence that plaintiff was a passenger and was injured without fault on her part *while on the steps of the car* for the purpose of boarding the same, by reason of a sudden starting of the car, the burden is thrown upon the defendant company to show that such injury was not the result of its own negligence". (Italics ours.) Instruction No. XI told the jury that plaintiff had established a *prima facie* case against defendant, if they found from all the evidence that she was injured *while a passenger upon defendant's car, from the starting of the car;* that in such a case there is a presumption that the accident was caused by defendant's negligence "and the duty was then on defendant to show that the injury was the result of inevitable casualty which human foresight and care could not prevent, for the law holds defendant responsible for the slightest negligence, and will not hold it blameless except upon the most satisfactory proofs". (Italics ours.)

Appellant urges that inasmuch as the complaint sets out two specific acts of negligence which caused the injury, there is no room for the application of the doctrine of *res ipsa loquitur* which the instructions quoted inject into the case. Such criticism would be sound if the complaint contained only the two specific allegations of negligence. (*Marovich* v. *Central California Traction Co.,* 191 Cal. 295 [216 Pac. 595].) Where the complaint, in addition to the specific allegations of negligence, also contains a general allegation of negligence, the rule is that one injured while a passenger on a car being operated by a carrier of passengers is entitled to the presumption arising from the doctrine of *res ipsa loquitur.* (*Roberts* v. *Sierra Ry. Co.,* 14 Cal. App. 180 [111 Pac. 519, 527].) That such injuries as the evidence shows the plaintiff here sustained do not ordinarily arise after one has reached the lower step of a street-car preparatory to boarding same, if the motorman and conductor have exercised due care, is clear, and the presumption exists that defendant was negligent in starting the car under the circumstances shown by plaintiff's evidence. The explanation of the accident as alleged in the complaint, as well as plaintiff's testimony of how the injury occurred, leaves much

uncertainty as to just how it was caused. "Where the explanation leaves it doubtful as to whether or not the ultimate cause of the injury is the negligence of the party charged, it is proper to instruct the jury as to the *res ipsa loquitur* doctrine." (*Connor* v. *Atchison etc. Ry. Co.,* 189 Cal. 1, 6 [207 Pac. 378, 380, 26 A. L. R. 1462].)

The injury, occurring as it did on a car in complete control of defendant, and according to plaintiff's testimony, after she "had mounted the lower step, prior to the starting of the car", plaintiff being a heavy woman, sixty-seven years of age, it might well be found under the circumstances to be negligence to have started the car at all until she had reached a place of safety, and the circumstances of the accident in the light of plaintiff's evidence and pleading would seem to make the doctrine of *res ipsa loquitur* particularly applicable.

■ Appellant urges that the instructions erroneously put the burden upon it of showing that defendant was not negligent, whereas all that is required is for it to meet such presumption by its evidence.

An instruction similar to No. VIII above shown, to the effect that it having been shown that plaintiff was a passenger on defendant's car and was injured without fault on her part by the action of the car, that "the burden of proving that there has been no negligence was cast upon defendant", was questioned as so shifting the burden of proof and considered by the Supreme Court in the case of *Bonneau* v. *North Shore R. R. Co.,* 152 Cal. 406 [93 Pac. 106, 125 Am. St. Rep. 68]. The court held, on page 410, that the language quoted above "had nothing to do with declaring any rule as to the burden of proof in the case". See, also, *Cody* v. *Market St. Ry. Co.,* 148 Cal. 90 [82 Pac. 666]; *McCurrie* v. *Southern Pac. Co.,* 122 Cal. 561 [55 Pac. 324]. We see no material difference between the instructions given here and in the Bonneau case, even though instruction No. VIII here does not inform the jury that the facts stated, if found "make a *prima facie* case". The instruction here fairly implied that the finding of such fact makes a showing of negligence sufficient to cause defendant to produce evidence sufficient to meet it to prevent the evidence from preponderating in plaintiff's favor. The language in the latter part of instruction No. XI is substantially the same as that

given in another instruction in the Bonneau case, and which was apparently approved in such case. Following such case similar language was approved in the case of *Bourguignon* v. *Peninsular Ry. Co.*, 40 Cal. App. 689 [181 Pac. 669]. The Supreme Court, in denying a rehearing of such case, takes occasion to say that such denial shall not be taken "as a complete approval" of such language, but the court held that while the instruction was open to criticism because of the use of such language, it could not have misled the jury when considered in connection with other instructions given as to the effect of a presumption and the requirement that plaintiff prove his case by a preponderance of the evidence.

The court instructed the jury here that the burden was upon plaintiff to prove by a preponderance of all the evidence that while she was attempting to board the standing car it was suddenly placed in motion, causing the injuries of which she complained, and also that while it was incumbent upon defendant to prove by a preponderance of the evidence that plaintiff was guilty of contributory negligence, "it is not incumbent upon the defendant to establish its freedom from negligence", and several times charged that the burden was upon plaintff to prove that defendant was guilty of some one or more acts of negligence charged in the complaint, and that if the evidence was equally balanced as to whether the car was standing when plaintiff attempted to board it or whether she attempted to board it after it was started she could not recover, and that while defendant was bound to exercise the highest degree of skill, it was not an insurer of the safety of its passengers, and that no presumption of negligence arose against defendant until the cause of the accident is proven. Inasmuch as the instructions involving the doctrine of *res ipsa loquitur* are expressly limited to the first cause of action, based on the alleged negligence in starting the car after plaintiff was on the step, we fail to see how the jury could have been misled thereby in view of all the instructions. Nor did either instruction tell the jury to bring in a verdict in favor of plaintiff. They simply advised, in effect, that under the facts stated a *prima facie* case of negligence was made. In this respect a very material difference exists between the instructions given here and that given in the case of *Seitzman* v. *Srere Corporation,* 116 Cal. App. 674 [3 Pac. (2d) 58], which told the jury to

bring in a verdict for plaintiff on such *prima facie* case unless the evidence negatived it and established by a preponderance of the evidence that the injury was not the result of defendant's negligence.

Nor do we see any error in plaintiff's instruction No. XIII, which in effect told the jury that the burden of establishing the defense of contributory negligence of plaintiff by a preponderance of the evidence was upon defendant, or how the jury could have been misled thereby.

Plaintiff's instruction No. XIV advised the jury that it was for them to determine from all the evidence whether or not plaintiff was guilty of contributory negligence in going upon the steps of the car preparatory to boarding it, and instruction No. XV that even though they should find from all the evidence that plaintiff undertook to board the car while the same was in motion, such fact did not constitute negligence as a matter of law but was a question of fact for the jury "to determine whether the act of plaintiff in so doing constituted negligence on her part". Appellant urges that such instructions are clearly erroneous, as they in effect charge that even if the jury found that plaintiff did board a moving car such fact would not prevent a recovery. In our opinion, under the amended complaint, which alleges the boarding of the car while standing still and plaintiff's injury thereafter through the negligence of defendant, such instructions should not have been given. Both of them permit the jury to weigh matters foreign to the issue raised by the amended complaint. If plaintiff was injured while boarding a moving car she cannot recover under the case alleged. Nor would she be permitted under her pleadings to introduce evidence to show that she was so injured, as such evidence would disprove the allegations of her own pleading. (*Hanton* v. *Pacific Electric Ry. Co.*, 178 Cal. 616 [174 Pac. 61].) If the jurors believed that plaintiff was injured while *boarding a moving car* they could not have found a verdict for plaintiff but must have found for defendant under all the instructions given them on the issues made by the pleadings. The instructions here complained of bear no resemblance to that given in the case of *Starkey* v. *Market Street Ry. Co.*, 90 Cal. App. 249 [265 Pac. 839], where the express language of the instruction advised the jury that plaintiff could re-

cover notwithstanding the jury found that he boarded a moving car, if they found that the injury was caused by the sudden starting of the car after plaintiff boarded same and before he reached a place of safety. The instruction there also advised the jury that if they found from all of the evidence that plaintiff in that case had reason to believe and did believe that the car was stopping for the purpose of permitting plaintiff to board same, and they further found that a person of ordinary prudence and caution under the same circumstances would have attempted to board it, plaintiff would not have been guilty of contributory negligence in doing so while the car was in motion. There, as here, "the gist of the action was the *starting and putting in motion a standing car* while plaintiff was boarding it. This was the only issue presented by the pleadings and the evidence. A recovery, therefore, based upon any other ground or theory cannot be sustained." (*Starkey* v. *Market Street Ry. Co., supra,* p. 526.) As we have said, the instructions criticised here do not direct a recovery upon a theory different from the one raised by the pleadings. They are but instructions on contributory negligence, and we fail to see how the jury could be confused by them in view of the many instructions advising them that plaintiff could only recover on proof of the fact that the car was standing when boarded by her and afterwards started, causing the injury. Nor in our opinion, considering all the evidence, could the jury have found that she boarded the car after it was started. Her testimony is positive on that point. The motorman testified that when he started the car he did not see anyone on the steps or in the safety zone near them; that through his rear vision mirror he could "see the ground for a distance of 8 or 10 feet from the steps toward the front of the car", and that "if anybody was standing by the car I could see them practically to the front of the car". The conductor testified: "My motorman called for bells, which I gave him after looking at the safety zone and finding no one there. After we had gone forty or fifty feet I heard a noise and saw a woman standing on the lower step." It is clear that the conductor did not mean to say that no one was in the safety zone, but that he saw no one in the zone about to board the car. The testimony is without conflict

that plaintiff walked in front of the car as it stood by the safety zone, held by the traffic signal which was against it, and that she walked alongside the car to the rear entrance. The conductor says that plaintiff was so short that he could not reach her over the bar of the fare box and so went out the exit and "got behind" her in the entrance. It is almost impossible to believe that a short, heavy woman sixty-seven years of age, attempting to board a moving car, would have first been heard and seen after the car traveled forty or fifty feet, even at the slow speed of five or six miles per hour. It is equally hard to see how plaintiff could have traveled from the front of the car to the rear step between the time the motorman looked in his rear vision mirror and saw no one and started the car. And it is difficult to see how the jury could do otherwise than conclude that plaintiff was on the steps and out of the motorman's sight when he started the car, and that the conductor was busy taking fares and failed to see the short woman who was on the lower step.

Appellant also urges that the two instructions above referred to are in conflict with defendant's instruction C, which advised the jury that "a passenger who voluntarily attempts to board a moving car assumes all the risks thereof and cannot recover for injuries sustained thereby." In our opinion it might well be questioned if such instruction C is correct as a general statement of law; but as applied to the issue raised by the pleadings here, we think it is eminently correct. Plaintiff's instructions XIV and XV simply advise the jury that it is not negligence as a matter of law to attempt to board a moving car but is a question of fact for them to decide; and they do not instruct the jurors, upon the facts stated therein, to bring in a verdict for anyone. Nor does defendant's instruction C contain any such affirmative direction. It does say that under the facts stated plaintiff could not recover, but not because she would be guilty of contributory negligence— the instruction does not mention the word negligence—but because if the facts therein were found to be true they would expressly negative the facts plaintiff relied on to prove the negligence alleged. Under the circumstances we see no prejudicial conflict. Under the evidence in this case and under the various affirmative instructions as to the

issues and findings of fact necessary to support a verdict in favor of the respective parties, we can only conclude that the jury found that the injury was the result of negligence occurring after plaintiff had boarded the standing car, and that it found that she did not attempt to board a car in motion.

 Plaintiff's instruction No. XVIII is criticised as charging on a question of fact, omitting certain necessary conditions, viz., reference to the defense of contributory negligence and the question of proximate cause, and in that it permits the jury to find defendant liable for negligence not pleaded or proved. Such instruction reads as follows, the criticised language being italicized: "I instruct you that *after discovering the presence of plaintiff and the fact that plaintiff was in a position of danger,* it was the duty of defendant to take *such measures* to avoid injury to plaintiff as an ordinarily careful and prudent person would have done; so, if you find from all the evidence that defendant failed to meet *this duty,* then you must find that defendant was guilty of negligence." We cannot recommend the instruction as a model of perfection of general application, but under the evidence of this case we think the facts it instructs upon are undisputed and that it leaves to the jury the determination of the only fact in dispute. The conductor testified, as we have said, that he did not see (discover) plaintiff until she was on the lower step of the car. That she was then in a position of danger is the only conclusion that can be drawn from the evidence. Whether defendant after such discovery took such steps as an ordinarily careful and prudent person (the only degree of care required by such instruction) would have taken is left to the jury. We see no prejudicial error in instructing upon facts not disputed. The evidence shows that plaintiff was at the time standing on the steps and that the car was then in motion. This instruction can only refer to the second cause of action, as the car had already been started, suddenly or otherwise. Under plaintiff's theory of the case she was then a passenger and entitled to be protected as such by the exercise of the highest degree of care; and it would seem that if defendant thereafter failed to act as an ordinarily prudent person would have acted it would unquestionably be guilty of negligence. Either party

has the right to have an instruction given on his own theory of the case when there is evidence to support it. (*Chicago City Ry. Co.* v. *Gates,* 135 Ill. App. 180.) There is nothing in the instruction that would permit the jury to speculate on what either the conductor or the motorman would or could have done *if either of them had sooner seen her*. Possibly the language could have been more specific in its reference to the particular measures actually taken by the conductor, but we do not see how the jury could apply the language to any other *measures* than those taken; and we think it was the duty of the jurors under the instruction to apply to such measures the test laid down, in determining whether defendant was or was not thereafter negligent. We fail to see that such instruction permits the jury to go outside of the issues in any respect.

The instruction in question being a laconic statement of what would be negligence if certain facts were found, it was not necessary to include elements in it that would be necessary before the court could properly direct the jury to find a verdict. If it had so directed the jury it would of necessity have had to state all the elements necessary to justify a verdict, viz., the fact that plaintiff herself was not guilty of contributory negligence and that the negligence stated was the proximate cause of the injury. But such rule has no application to the instruction given. (*Chicago City Ry. Co.* v. *Gates, supra.*)

 Appellant urges that the verdict of $11,500 is excessive. The evidence shows that plaintiff was sixty-six years of age at the time of the accident, with a life expectancy of eleven years; that there was a transverse fracture of the upper third of the tibia, "with an angle, I think, running down"; that her leg was put in a fracture box and plaintiff remained in bed for almost six weeks, "causing very much suffering"; that plaintiff had to have her sister turn her every time she changed position; that she "was in such pain" that she "could hardly stand it"; that "such condition continued for several months, and my leg pains me yet"; that after she got out of bed she used crutches for two or three months and after that a cane; that she was still using a cane at the time of the trial, some fifteen months after the accident; that her injury affected her ability to work, in that she cannot do

close work for the reason that she gets so nervous she has to lay it down, and she cannot use a sewing-machine but has to do work by hand; that she never had trouble with her knee before of any kind. A doctor testified that "the condition of plaintiff's right knee is reasonably probable to be permanent". The evidence further shows that plaintiff's medical expenses amounted to $286.75; that her average monthly earnings for a year or two prior to the accident was $200; that she returned to work in February of 1930, and that her average weekly earnings between the date of the accident and the time she returned to work were about $7.50. It is evident that the jury must have based a large part of its verdict on the pain and suffering resulting from the accident.

It is well settled that a trial court, and much less an appellate court, should not set aside a verdict because the verdict is deemed excessive unless it is so excessive as to indicate passion and prejudice. (*James* v. *Oakland Traction Co.*, 10 Cal. App. 785, 800 [103 Pac. 1082].) In this case one of the grounds for defendant's motion for a new trial was the alleged excessive amount of the verdict, and the motion was denied. In view of the fact that the amount was fixed in the first place by the jury, and that the trial judge, who heard the evidence, considered the question of excessive damages on motion for a new trial and did not conclude that the amount allowed was unreasonable, we cannot say that the verdict is "so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury", which we understand is the test on appeal. (*Hale* v. *San Bernardino Valley Traction Co.*, 156 Cal. 713 [106 Pac. 83, 84[.)

Judgment affirmed.

Stephens, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 6, 1934, and the following opinion then rendered thereon:

THE COURT.—Petition for rehearing denied. Petitioner calls our attention to the closing sentence of instruction VI, and of our failure to comment on same. It is not

the duty of an appellate court to discover errors not called to its attention.

 After stating certain conditions which, if found to exist, justified a verdict for plaintiff, the instruction concludes: "then your verdict should be for the plaintiff, unless you shall further find that the plaintiff was herself guilty of negligence, and that such negligence was *the* proximate cause of the injuries sustained". (Italics ours.) Appellant urges that such instruction amounts to a charge that unless any such negligence was *the sole* proximate cause of the accident it would not defeat a recovery by plaintiff. The case of *Straten* v. *Spencer,* 52 Cal. App. 98 [197 Pac. 540], is cited as authority for the contention urged. If such instruction stood alone we would unhesitatingly declare it to be prejudicially erroneous. A similar defect existed in an instruction complained of in the case of *Squier* v. *Davis Standard Bread Co.,* 181 Cal. 533 [185 Pac. 391], concerning which the court says on page 537, "the sentence containing the objectionable words is immediately preceded by a sentence requiring the jury to determine whether plaintiff's negligence, if any, was '*a* proximate cause' of the injuries received by him. Moreover, the jury was elsewhere fully and correctly instructed on the law of contributory negligence. Considering the instructions as a whole, we consider the possibility that the jury could have been misled by the error complained of so remote as to be altogether unworthy of serious consideration." In the present case the jury was fully instructed as to contributory negligence and was told as a part of such instruction that "it matters not how slightly or in what degree it contributes, provided it does contribute directly or proximately to the injuries sustained". The same doctrine is laid down in several other instructions given by the court, and considering all the instructions together we cannot see how the jury could possibly have been misled by the defect in the instruction of which complaint is now for the first time made.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 5, 1934.