[Civ. No. 12869.   Second Dist., Div. Three.   July 30, 1942.]

WILLIAM DIETERLE et al., Appellants, v. YELLOW CAB COMPANY (a Corporation) et al., Respondents.

A. Ronald Button, Paul Barksdale D'Orr, Thomas A. Reynolds and Leonard F. Herzog for Appellants.

Harry B. Ellison and J. L. Ronnow for Respondents.

WOOD (Parker), J.—Plaintiffs were passengers for a reward in a taxicab of defendant Yellow Cab Company, operated by defendant Nave. The action was for damages for personal injuries resulting from a collision at an intersection between the cab and an automobile. Plaintiffs appeal from the judgment for defendants Yellow Cab Company and Nave entered upon the verdict of a jury.

This is the second appeal in this action. Upon the first trial the defendants were the Yellow Cab Company, Nave, one LaForce, who was the driver of the automobile, and one Whelan, the alleged owner thereof. Judgment in that trial was for plaintiffs against LaForce, and in favor of Whelan, the Yellow Cab Company and Nave. The trial court directed the verdict for Yellow Cab Company and Nave. Plaintiffs appealed from the judgment in favor of Whelan, the Yellow Cab Company and Nave. The judgment in favor of Whelan was affirmed. In reversing the judgment in favor of the Yellow Cab Company and Nave the District Court of Appeal stated that it was error to direct the verdict and, ''Since the plaintiffs were being transported as passengers for a reward by respondents they could rely upon the obligation of the driver of the taxicab to use the utmost care and diligence for their safety. In presenting their case to the trial court they were entitled to the presumption embodied in the doctrine of

*res ipsa loquitur.''* (*Dieterle* v. *Yellow Cab Co.* (1939), 34 Cal. App. (2d) 97, 100 [93 P. (2d) 171].)

The collision occurred in December, 1937, about 8 p. m., at the intersection of Beverly Boulevard and Lucerne Street in Los Angeles. The taxicab was going east on Beverly. The automobile was going north on Lucerne. A boulevard stop sign had been erected, according to law, at the south entrance to said intersection requiring vehicles approaching Beverly from the south on Lucerne to stop before entering the intersection. The streets were wet; it had been raining but was not raining at the time of the accident; the night was dark and Beverly Boulevard was lighted.

The complaint alleged that the collision between the cab and the automobile was caused by the concurrent negligence of all defendants.

Appellants contend that the trial court erred prejudicially in giving certain instructions and in refusing other instructions requested by plaintiffs.

The court instructed the jury, in defining the issues to be determined, that if it found defendants were negligent plaintiffs could not recover unless *that* negligence was *the* proximate cause of any injury to plaintiffs. Appellants claim that this instruction disregarded the issue of the *concurrent* negligence of Yellow Cab Company and Nave, defendants herein, and LaForce, a defendant in the first trial, as the proximate cause of the injuries to plaintiffs; that by reason of the use of the definite article ''the'' instead of the indefinite article ''a,'' preceding the words ''proximate cause,'' the whole issue was changed and plaintiffs were restricted to a recovery based upon the negligence of the Yellow Cab Company and Nave as the sole proximate cause of the accident and thus were prevented from recovering for ''any, even the slightest negligence,'' on the part of said defendants Yellow Cab Company and Nave. That instruction was incorrect. The jury, however, was instructed further: ''. . . that even if you should believe from the evidence that the driver of the Plymouth car was negligent at the time and place of the accident, in failing to make the boulevard stop or otherwise, nevertheless if you also believe from the evidence that the driver of the taxicab failed at said time and place to *use the utmost care and diligence for the safe carriage of plaintiffs, to provide everything necessary for that purpose and exercise reasonable degree of skill,* under the circumstances, for the safety of his passengers (as I have defined such care

elsewhere in these instructions), and that his failure to exercise *said degree of care* contributed to proximately cause injury and damage to the plaintiffs, then regardless of the negligence of the driver of the Plymouth car, the taxicab company and its employee would be liable for damages suffered by the plaintiffs.'' After defining the expression ''proximate cause'' in an instruction, the court gave a further instruction: ''This does not mean that the law seeks and recognizes only one proximate cause of an injury, . . . To the contrary, the acts and omissions of two or more persons may work concurrently as the efficient causes of an injury, and in such a case, each of the participating acts or omissions is regarded in law as a proximate cause.'' The court also instructed the jury: ''When the negligent acts . . . of two or more persons . . . contribute concurrently, and as proximate causes, to the injury of another, each of such persons is liable. . . . it is no defense for one of such persons that some other person, not joined as a defendant in the action, participated in causing the injury even if it should appear to you that the negligence of that other person was greater, . . .''

In the case of *Hellman* v. *Los Angeles Ry. Corp.* (1933), 135 Cal. App. 627 [27 P. (2d) 946, 28 P. (2d) 384], at page 645, referring to the expression *''the* proximate cause''* in an instruction, it was stated: ''If such instruction stood alone we would unhesitatingly declare it to be prejudicially erroneous. A similar defect existed in an instruction complained of in the case of *Squier* v. *Davis Standard Bread Co.,* 181 Cal. 533 [185 Pac. 391], concerning which the court says on page 537, 'the sentence containing the objectionable words is immediately preceded by a sentence requiring the jury to determine whether plaintiff's negligence, if any, was *''a* proximate cause''* of the injuries received by him. Moreover, the jury was elsewhere fully and correctly instructed on the law of contributory negligence. Considering the instructions as a whole, we consider the possibility that the jury could have been misled by the error complained of so remote as to be altogether unworthy of serious consideration.' ''

The case of *Chandler* v. *Benafel* (1934), 3 Cal. App. (2d) 373, 374 [39 P. (2d) 892], involved an injury to plaintiff, a pedestrian, as the result of a collision between two automobiles. One of the issues therein was the alleged concurrent negligence of the drivers. The jury was instructed, in refer-

ring to one of the drivers, that in order to hold that driver liable, it must find that his negligence was *the* proximate cause of injury to plaintiff. The court held that the instruction was incorrect but stated further: "The jury, however, was further instructed: 'If the concurrent or successive negligence of two persons combined result in an injury to a third person, he may recover of either or both.' The whole theory of the case upon which it was submitted to the jury, and the discrimination with which they decided it, supports the contention . . . that the jurors understood the law and knew just what they were doing in returning their verdicts in this case. Under such circumstances their determination should not be disturbed."

In the present case, considering all the instructions together, it cannot be held that the jury was misled by the defect in the instruction wherein the article "the" was used preceding the words "proximate cause" instead of the article "a." The jury was adequately instructed as to the essential legal principles upon the subject of concurrent negligence.

The opinion upon the former appeal stated, as shown above, that plaintiffs were entitled to the presumption embodied in the doctrine of *res ipsa loquitur*. ■ At the retrial the court on its own motion gave the following instruction: "From the happening of the accident involved in this case, as established by the evidence, there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that it did, in fact, exercise the utmost care and diligence or that the accident occurred without being proximately caused by any failure of duty on its part."

It will be noted that the instruction did not include the word "presumption" which was used in the former opinion in stating that plaintiffs "were entitled to the presumption embodied in the doctrine of *res ipsa loquitur*." As noted, the instruction stated "there arises an *inference* that the proximate cause . . . was some negligent conduct. . . ." (Italics added.)

Appellants assert that the instruction did not give plain-

tiffs the full benefit of the doctrine of *res ipsa loquitur*. They state that their claim of error is not based upon the use therein of the word "inference" rather than "presumption," but the use of the word "warrants" in the expression therein, "it warrants a verdict for the plaintiffs." Their argument is that the word "warrants" makes the drawing of the inference by the jury permissive rather than mandatory; that such inference of negligence, which is founded upon a doctrine of law rather than the permissive reasoning of the jury, must be accepted by the jury as necessitating a verdict for plaintiffs in the absence of sufficient evidence produced by defendants to satisfy the jury that the inference, so created, has been rebutted or overcome.

The remainder of the instruction immediately following the sentence in which the word "warrants" was used indicates that the meaning to be ascribed to the word as there used was not, as suggested by appellants, that it was optional with the jury whether it returned a verdict for plaintiff if the inference was not rebutted. The remainder of the instruction, which was in the nature of a deduction based upon the preceding statements, was: "Therefore you should weigh any evidence tending to overcome that inference, bearing in mind that *it is incumbent upon the defendant to rebut the inference* by showing that it did, in fact, exercise the utmost care and diligence or that the accident occurred without being proximately caused by any failure of duty on its part." (Italics added.)

That such a meaning was not to be attributed to that word was also indicated by two other instructions given next succeeding the one in which the word "warrants" was used. The first one commenced, "Lest these statements give you an incorrect understanding of the law generally, I would inform you that they constitute an exception to the general rule that the mere happening of an accident does not support an inference of negligence. However, certain exceptional circumstances, when existent, authorize the exceptional rule. They are as follows: . . . (here various circumstances are stated). . . ." The last paragraph of that instruction was: "When the conditions I have mentioned exist, the inference of negligence, to which they give birth, will support a verdict for the plaintiff, in the absence of a showing by defendant that offsets the inference." The next instruction was: "In making such a showing, it is not necessary for a defendant to overcome the inference by *a preponderance of evidence.*

Plaintiff's burden of proving negligence by a preponderance of the evidence is not changed by the rule I have mentioned. It follows, therefore, that in order to hold the defendant liable, the inference of negligence must have greater weight, more convincing force in the mind of the jury, than the opposing explanation offered by the defendant.

"If such a preponderance in plaintiff's favor exists, *then it must be found that some negligent conduct on the part of defendant* was a proximate cause of the injury; but if it does not exist, if the evidence preponderates in defendant's favor, or if in the jury's mind there is an even balance as between the weight of the inference and the weight of the contrary explanation, neither having the more convincing force, then the verdict must be for the defendant." (Italics added.)

The instructions, relative to such inference, show from the whole context thereof that the jury was instructed that an inference of negligence on the part of defendants existed; that such inference was evidence in favor of plaintiffs and defendants were required to rebut, offset or overcome it; that if the inference was of greater weight than the explanation offered by defendants it *"must be found"* that defendants were negligent.

In addition to giving the instructions above mentioned that the inference of negligence was evidence in favor of plaintiffs, that plaintiffs' burden of proving negligence was not changed because such inference existed, and that such inference evidence should be weighed with that opposed to it, the court told the jury in other instructions that, "The burden is upon the plaintiffs to prove by a preponderance of the evidence that the defendants were negligent . . ." and, "If plaintiffs fulfill this burden, *they are entitled to recover* from defendants. If plaintiffs fail in carrying this burden, the defendants are entitled to your verdict." (Italics added.) A further given instruction was that the jury should consider the instructions as a whole and regard each in the light of the others.

It thus appears from the whole context of the instructions above referred to, that the direction to the jury, relative to the inference, was that the verdict should be for plaintiffs if the inference of negligence to which plaintiffs were entitled under the doctrine of *res ipsa loquitur* was not rebutted or overcome by defendants.

■ Appellants assign the giving of the following instruction as error: ". . . while the defendants were charged with the

duty of exercising the utmost care . . ., that this does not mean that they were obliged to use exceptional skill or . . . foresight *to anticipate the conduct of others.* While exceptional skill is to be admired . . ., the law does not demand it as a standard of conduct.

"In other words, if you find that . . . Nave in the operation of the taxicab conducted himself as might reasonably be expected of the ordinary prudent person charged with the duty of exercising a high degree of care for his passengers, then I instruct you that he was not negligent. . . ."

The criticism thereof is that no distinction was made between "utmost" and "ordinary" care relative to the duty of defendants to anticipate the conduct of others, and that the cab driver was required to conduct himself as an *ordinary prudent person only.* In another instruction the court stated that defendants were "required by law to use the utmost care and diligence for the safe carriage of plaintiffs to provide everything necessary for that purpose and to exercise a reasonable degree of skill." Thereafter, in six different instructions, the court stated that defendants were required to use "the utmost care and diligence," and in another instruction stated that they were "bound to exercise the highest degree of care." In view of these various instructions, it does not appear that the jury was misled by the criticized instruction as to the degree of care required by defendants.

Appellants also object to an instruction which stated in substance that if the negligence of LaForce was the sole cause of the accident the verdict should be for the Yellow Cab Company and Nave. The claim is that the instruction ignored the theory of joint liability of all the original defendants for concurrent negligence. The sole liability of LaForce was an issue in the case and it was proper to give the instruction.

It is claimed further that other instructions which were given, although correct as statements of law, were unnecessary and tended to mislead the jury. Such instructions, so referred to, were entitled: "Guessing Cause of Accident Not Permitted"; "Elaboration on Duty of Carrier"; "Negligence, Definition"; "Negligence Not to Be Compared"; and "Imminent Peril." The substance of each of the instructions was in accord with the ordinary implications of its title. It does not appear that these instructions were improper.

Concerning the happening of the collision, four witnesses who were not acquainted with any of the parties testified as follows:

A pedestrian, who was at the intersection, testified that LaForce did not make the boulevard stop and that the cab was in the intersection first.

A person in an automobile following the cab, said the cab was going 20 miles per hour; that he saw the other car about 75 feet south of the intersection, going 30 miles per hour, and its speed was not reduced and it did not stop; that LaForce said he did not stop.

A person in an automobile going west on Beverly, said that the cab was going 20 miles per hour; that he saw the other car about 50 feet south of Beverly going over 25 miles per hour and it did not stop.

A person in an automobile about 60 feet back of the cab, said that the cab was going about 20 miles per hour and the car was going about 30 miles per hour.

There was other testimony as follows:

Plaintiff Charlotte Dieterle said that the cab was going 30 miles per hour and that it did not decrease its speed; that she saw a light coming from the right side, then there was an impact.

Plaintiff William Dieterle said that the cab was going 30 miles per hour and that he did not see the other car before the accident.

Defendant Nave said that he was going about 20 to 25 miles per hour as he approached the intersection and he went on compression to cross the dips on the west and east sides of Lucerne; that he saw the other car about 125 feet away when he was 60 feet from the intersection and that he did not judge its speed; that he did not see LaForce stop and the only time he took his eyes from the other car was for a second when he went through the dip.

A police officer said that LaForce told him he did not make the boulevard stop.

LaForce did not testify.

When all of the instructions are considered as a whole and the evidence (the substance of which as to liability is above set forth) is examined, it should not be concluded in view of the provisions of section 4½, article VI of the State Constitution that prejudicial error has resulted.

The judgment is affirmed.

Schauer, P. J., and Shinn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 24, 1942.