[Civ. No. 14677. First Dist., Div. One June 14, 1951.]

JOHN E. CONNOR, Appellant, v. PACIFIC GREY-
HOUND LINES (a Corporation) et al., Respondents.

748

Herbert O. Hepperle for Appellant.

Robert L. Lamb for Respondents.

PETERS, P. J.—John E. Connor, the plaintiff, was injured when a Pacific Greyhound Lines bus in which he was a passenger, and which was operated by defendant Norman D. White, collided with an automobile being driven by John Kane, at the intersection of Bayshore Highway and San Bruno Avenue in San Mateo County. The jury brought in a verdict in favor of defendants. From the judgment entered on that verdict plaintiff appeals.

At the scene of the collision, Bayshore runs north and south, and San Bruno runs east and west. There are three traffic

lanes running in each direction on Bayshore, divided by an unpaved area in the center. In addition, there are "turn-off" roads on each side of Bayshore. San Bruno is a two-lane highway. There are automatic traffic lights on each corner of the intersection, and also in the unpaved dividing strip of Bayshore. In addition, there are street lights in the area. At the time of the accident the bus was proceeding north on Bay-shore, and the Kane car was going west on San Bruno.

Connor, the plaintiff, was a railroad brakeman. On the evening of June 28, 1948, he arrived in San Jose by train, and purchased transportation on a Greyhound bus leaving for San Francisco at about midnight. Connor seated himself on the driver's side on the aisle about three or four rows from the front of the vehicle. Admittedly, the bus left San Jose nearly an hour late.

White, the driver of the bus, testified that he was going about 45 miles per hour just before the collision; that he was then about 50 minutes late; that just before he entered the intersection he pulled over to the fast inside northbound lane; that he was not weaving in and out of traffic; that when he was about 250 to 300 yards from the intersection the traffic lights were green for north and southbound traffic; that when he entered the intersection the lights were still green; that as he approached the intersection there were two auto-mobiles waiting for the lights to change in the center and out-side northbound lanes of Bayshore; that these vehicles were just starting to cross with the green lights as he approached; that just as he entered the intersection he saw the Kane car coming from his right; that the Kane car hit the bus just behind the right front wheel; that the impact threw the bus into the left guardrail; that the brakes of the bus were knocked out of commission by the collision; that he tried to get the moving bus off the guardrail, but, just before he got to an overpass beyond the intersection, the steering apparatus went out; that he then had no control over the bus and it proceeded until it crashed into a concrete abutment which is part of the overpass. Connor, and the driver, and others, were injured as a result of the collision.

Connor testified to a quite different version of the accident. He testified that the bus was weaving in and out of traffic and travelling at about 60 miles per hour before entering the intersection; that he was looking out the left window of the bus just as it entered the intersection so that he did not ob-serve the traffic lights at that moment; that just as the bus

entered the intersection it took a sudden swerve to the left; that he turned his eyes to the right and saw, through the windshield of the bus, yellow lights to his left just about the level of his eyes; that at that moment he noticed the Kane automobile, and the collision occurred. On cross-examination Connor was confronted with a statement signed by him and given to a representative of Greyhound about two weeks after the accident which contains several damaging admissions. Among other things, the statement declares: "I was awake but have no idea as to our speed, nor do I know in which lane we were travelling. Suddenly our driver swerved to the left and I then saw an auto headed straight at the right side of the bus and the next instant it crashed head-on into the side of the bus . . . as I did not notice the signals, I know nothing about them. I have a faint recollection of seeing a yellow light, but I do not remember where it was, and do not know whether or not it was a traffic light. My truthful opinion is that the driver of the car that struck the bus was to blame for the accident. I consider that the bus driver was a safe, cautious and careful driver, and I would not hesitate to ride with him again." The statement which was not in the handwriting of Connor, was three pages long. Connor admitted that he signed each page, and that he knew that it had been secured by a representative of Greyhound. He denied reading the statement before he signed it, and denied making the statements that White was a cautious driver, or that the accident was the fault of Kane. He admitted that, as a railroad man, he knew the custom about statements being taken by carriers after an accident.

By stipulation the deposition of Curtis L. McCullough taken in another action growing out of the same accident was read into evidence, he being unavailable at the time of the present trial. McCullough, a sailor, was standing on the northeast corner of the intersection at the time of the accident. He was trying to hitchhike a ride to San Francisco. He stated that he saw the Kane car coming from the east when it was some distance away; that when he first saw the Kane car coming, the traffic lights at the intersection were green for east-west traffic; that they changed to amber when Kane was 50 to 75 feet from the intersection, and changed to red when Kane was about 5 feet from the corner. Although there are some inconsistencies in his story, he was positive that the Kane car entered the intersection when the lights were red for east-west traffic. He stated that the Kane car

approached the intersection at about 40 to 45 miles per hour and did not slow down as it entered; that he saw the two cars going north in the outside and middle lanes of Bayshore and saw them start to cross and saw Kane dart in front of them and clear those two cars by about 3 feet; that he heard the operators of those cars slam on their brakes; that he saw the bus coming on the inside northbound lane of Bayshore, and Kane, after passing in front of the other two cars, crashed into the side of the bus; that the bus was then going about 25 to 30 miles per hour. The bus had the green light when it entered the intersection.

Kane, the driver of the private automobile involved in the collision, testified that he was going about 20 miles per hour when he entered the intersection; that when he entered, the lights were green for east-west traffic and changed to amber while he was in the intersection; that he first saw the bus when he was crossing the middle of the three northbound lanes of Bayshore; that he honked his horn and applied his brakes but could not avoid the collision.

There is no dispute but that the weather was clear, the roadways dry, and that all the vehicles involved had their lights on.

Appellant argues that, considering the high degree of care owed by a carrier to a passenger, the evidence is insufficient to support the judgment. This argument is largely predicated upon the statement of White, the driver of the bus, that, just before the accident, ''I just happened to glance to the right and I see [sic] this car just entering the intersection from the east, and it was too late to try to stop.'' It is urged that, as a matter of law, this indicates a lack of that high degree of care required of a carrier toward its passengers; that White's testimony that he was watching the traffic and looked east and west before entering the intersection and did not see the Kane car does not create a conflict where the other evidence shows either that he did not look, or, if he did, he must have seen. *Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237 [116 P. 513], and *Chrissinger* v. *Southern Pac. Co.*, 169 Cal. 619 [149 P. 175], are cited in this connection. The Zibbell opinion affirmed a judgment for plaintiff. The Chrissinger case affirmed a judgment of nonsuit. ▮ It is quite apparent that in the present case the jury found that the accident happened *solely* because of the negligence of Kane in entering the intersection against a red light. That implied finding is amply supported. White testified that he looked east on

San Bruno while he was approaching the intersection. The evidence shows that the two private vehicles in the outside and middle lanes of Bayshore started across the intersection before the bus did. McCullough's testimony was to the effect that the Kane car entered the intersection at a high rate of speed against the red light. Under these circumstances the question as to whether White exercised the high degree of care required of common carriers was for the jury. Its finding that such care was exercised is amply supported.

 Appellant's main attack is upon the action of the trial court in giving or refusing to give certain instructions. Error is assigned in the giving of the following two instructions:

"The driver of a vehicle who enters an intersection pursuant to a green 'Go' signal and is exercising due care is not required to maintain a lookout for a vehicle which might enter the intersection from another highway in violation of the traffic signal."

"If the bus driver himself was exercising ordinary care as he approached the point where the accident occurred, and so long as there was nothing in the circumstances that caused him, or would have caused a reasonably prudent person in his position to think differently, he had a right to assume that the driver of the automobile that collided with defendants' bus was possessed of normal faculties of sight and hearing, and of ordinary intelligence, and that he was using and would use those faculties in the exercise of ordinary care for his own safety and for the safety of others."

Appellant's argument is that these instructions told the jury that the bus driver had no duty to maintain a lookout for a vehicle that might enter the intersection in violation of law, and, in effect, directed a verdict for defendants if the bus had the right of way. Moreover, so it is urged, these instructions told the jury that ordinary care did not require the bus driver to maintain a lookout for vehicles that might be violating the law. It is the law that one in the exercise of ordinary or a high degree of care is not required to assume that others will break the law unless he knows or should have known that such might occur. There is nothing in *Holder* v. *Key System*, 88 Cal.App.2d 925 [200 P. 2d 98], cited by appellant, to the contrary. In that case an instruction was offered to the effect that one proceeding with a "Go" signal is not negligent in failing to keep a lookout for vehicles

that might enter the intersection in violation of the signal. The court held that it was not error to refuse this instruction, first, because the subject matter was covered by other instructions, and second, because a motorman who knew that his train would change the traffic signals to green for his train was required to keep a lookout for vehicles in the crossing if he knew or should have known that such vehicles might be in the crossing when the signals were changed. This is one phase of the general rule that one exercising care for his own concerns cannot assume that others will do the same if it is reasonably apparent that those others are not going to perform their duty. (*Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157 [195 P.2d 416].) ▮ The challenged instructions correctly state the general rule and the exception thereto.

▮ Appellant also attacks these instructions on the ground that they fail to state the high degree of care required of a carrier toward its passengers, and impose on such carrier only the duty of ordinary care. The two challenged instructions cannot be read alone. In the present case the jury was instructed in detail, at length, and correctly, as to the duty owed by a carrier to its passengers. The challenged instructions obviously purported to state the duty of care owed by a carrier to other persons and vehicles using the streets, and not the duty of care owed to passengers. In view of the clear and extensive instructions given on the duty of care owed passengers, the jury could not, reasonably, have otherwise interpreted the instructions. (*Reilly* v. *California Street Cable R. R. Co.*, 76 Cal.App.2d 620 [173 P.2d 872] ; *Dieterle* v. *Yellow Cab Co.*, 53 Cal.App.2d 691 [128 P.2d 132].)

▮ It is next urged that certain instructions given by the court negatived the doctrine of res ipsa loquitur, which admittedly is applicable as between carrier and passenger. Proper instructions on the doctrine of res ipsa loquitur were given. They are lengthy, detailed and adequate. Among other things, these instructions, with great clarity, informed the jury of the inference of negligence arising in such cases, and also stated that this inference of negligence, by itself, might sustain plaintiff's burden of proof if not overcome by evidence of defendant. These instructions are not challenged by appellant who tacitly admits that they were adequate. But appellant does object to the following three instructions, which were not given in order but were scattered throughout the charge :

"If, after considering all of the evidence, you find that the

accident might have been caused in several different ways and you cannot determine from the evidence what was the proximate cause of the accident, then there can be no recovery by the plaintiff and I instruct you to find a verdict for the defendants.''

''In order for you to find a verdict in favor of the plaintiff in this action, it is necessary that you find from a preponderance of the evidence that some act or omission of the defendant driver, Norman White, at the time and place of the happening of the accident in question was negligent; and also that such negligence, if any, was a proximate cause of the injuries received by the plaintiff, if any.''

''The term 'highest degree of care' which was the duty owed by the defendants to the plaintiff means the highest degree of care which can be reasonably expected of and used by a person in the operation of a common carrier or conveyance for hire. If defendant White used this degree of care immediately before and at the time of the happening of this accident, then I instruct you he was not negligent. If you find that he was not negligent, then your verdict must be in favor of the defendants, Pacific Greyhound Lines and Norman White.''

Appellant urges that these three instructions conflicted with the instructions on res ipsa loquitur, and, in effect, negatived that doctrine. This result is accomplished by a giving to each of the challenged instructions a strained construction, and by then treating each of them as if they stood alone, and as if they were the only instructions given on the subject. The entire charge, of course, must be read to ascertain the meaning and significance of any one instruction. When so read, in view of the clear, detailed and correct instructions on res ipsa loquitur, it is perfectly clear that the jury could not possibly have been confused.

Appellant objects to the first instruction above quoted, contending that under it he was required to prove the specific cause of the accident in violation of the rule of *Ybarra* v. *Spangard*, 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258], and that the instruction, in effect, took the inference of negligence out of the case, in violation of the rule of *Ybarra* v. *Spangard*, 93 Cal.App.2d 43 [208 P.2d 445]. Properly construed, it is quite clear that the challenged instruction merely pointed out to the jury, somewhat awkwardly, that it must consider all of the evidence in determining the issue of proximate cause. In view of the specific instructions on res ipsa

loquitur in which the jury was told quite clearly that whether or not the inference raised by the doctrine had been met by defendant was a jury question, the challenged instruction cannot reasonably be construed as removing the inference from the jury's consideration.

Complaint is made of the second instruction on the ground that it takes out of the case all questions of negligence in the maintenance of its equipment by Greyhound, and requires a negligent act or omission by the driver before the jury could find that defendant company was contributively negligent. While the instruction is not particularly appropriate, there was no error in giving it. The case was tried by appellant on the theory that the driver of the bus was negligent and that such negligence was one of the proximate causes of the accident. There is not one word of testimony indicating that the bus had any faulty equipment. Appellant's own witnesses testified that the lights of the bus were on. It is true that the driver of the bus testified that *after* the bus hit the guardrail the brakes went out because the impact broke the brake line. While this last portion of his testimony may be a conclusion, it came in without objection, and there is not one word of testimony to the contrary.

The third quoted instruction is challenged on somewhat similar grounds, that is, that it defines "highest degree of care" only in relation to the duty of the driver of the bus and necessarily excluded other possible acts of negligence of respondents. What was said of the second quoted instruction is equally applicable here. There was no evidence of any kind charging any other act of negligence on the part of respondents except the charge that the driver was negligent.

The appellant next argues that it was prejudicial error to give the following instruction on sudden emergency: "The duty of a carrier to its passengers is not an absolute, theoretical one that calls for a certain fixed prescribed course of conduct under all circumstances. Thus, if you should find that the driver of the bus was confronted by an emergency not caused by his own negligence, wherein he was required to make a choice of courses of conduct, both dangerous for someone, the fact that he chose a course that involved the risk of plaintiff's safety is not, in itself, proof of negligence. The character of the emergency, the situation confronting him, the relative seriousness of the hazards involved, the duty to any person other than plaintiff—these things all must be considered by you in determining whether there was negligence."

Appellant contends that there was no evidence that warranted the giving of this instruction. He urges that such an instruction could properly have been given only if there had been evidence that there were alternative courses of action open to the bus driver, and contends that the evidence shows that no such alternatives here existed. Of course, an instruction on sudden peril should be given only where "at least two courses of action are present after the danger is perceived and where no negligence is chargeable to the person to whom those courses of action are open" (*Perry* v. *Piombo*, 73 Cal. App.2d 569, 572 [166 P.2d 888]), but in this case the instruction was proper because the evidence is susceptible of the interpretation that the driver of the bus did have alternative courses of conduct after he saw Kane proceeding against the signal. ' Appellant relies upon one statement made by the driver of the bus that he saw the Kane car as he entered the intersection and then it was "too late to try to stop or anything." This one statement cannot be separated from the balance of the driver's testimony. The entire statement of the driver reads as follows: "Well, I was—just as I entered the intersection I just happened to glance to the right and I see [sic] this car just entering the intersection from the east, and it was too late to try to stop or anything, so I sort of gave way and hit my brakes as he hit me. I saw I couldn't get ahead of him. I tried to go on through before he could contact me, because I knew I couldn't stop, and just as he hit me I hit my brake." Thus, the driver did consider the possibility of stopping or accelerating, but decided to continue as he was. In other words, in the sudden emergency, he decided that all that he could do was proceed as he was going.

Appellant also complains of the instruction on the ground that it fails to recognize that, even in an emergency, the duty of a carrier to its passengers is paramount to its duty to others. Of course, it is not the law, as is at least implied by appellant, that the duty of a carrier to its passengers is so absolute and so great that it requires a complete disregard of the rights of nonpassengers who may be in danger. All the instruction does is to tell the jury that, where a driver of a carrier is faced with alternative courses of conduct which might involve danger to the passengers, it is not necessarily negligent to have chosen the alternative that turned out to be dangerous to appellant.

Appellant also claims that it was error to have given an instruction on unavoidable accident. The record shows that

there were two instructions given on this subject. It is assumed by the parties that respondents proposed one of these instructions. Immediately following this instruction appears another on the same subject. The record does not show who proposed it. Respondents charge that it was offered by appellant, and appellant does not challenge this statement. ▉ Moreover, where the record does not show at whose request an instruction was given, it must be presumed that it was requested by the appellant. (See cases collected 2 Cal. Jur. p. 869, § 509, at p. 870; 1 10 Yr.Supp. p. 524; 1950 Supp. p. 222.) Thus, the situation is one where both parties offered instructions on a particular subject and the court gave both. Now appellant urges that the instruction offered by respondents should not have been given because there was no evidence that would justify giving an instruction on that subject matter. ▉ Obviously, appellant, by offering an instruction on the subject, must have believed that the issue of unavoidable accident was in the case. In such a situation appellant cannot legally complain that the court instructed on the subject. (*Creamer* v. *Cerrato*, 1 Cal.App.2d 441 [36 P.2d 1094].)

▉ Moreover, there was substantial evidence that the accident was unavoidable so far as the bus driver was concerned. If the accident was proximately caused by the negligence of Kane it was "unavoidable" as far as respondents are concerned. (*Jolley* v. *Clemens*, 28 Cal.App.2d 55 [82 P.2d 51]; *Creamer* v. *Cerrato*, 1 Cal.App.2d 441 [36 P.2d 1094].) Therefore, it was not error to instruct on the doctrine.

▉ Appellant also attacks the form of the instruction on this issue offered by respondents, claiming that it stated the duty of the carrier as less than that of highest degree of care. In view of the detailed specific instructions given on this subject, the ambiguity in the challenged instruction could not possibly have misled the jury.

▉ Appellant next objects to the refusal of the court to give the following instruction: "You are instructed that on the occasion of the accident involved in this controversy the defendant Pacific Greyhound Lines only had to use ordinary care as between it and the private automobile that it collided with, but this is not the degree of care required under the law on the part of the defendant Pacific Greyhound Lines as applied to the plaintiff, and you must not be misled by reason of the relationship of the defendant Pacific Greyhound Lines' bus and the private automobile because at all times it was the duty of the Pacific Greyhound Lines in the transportation of

plaintiff to use the highest degree of care for his safety."

The instruction undoubtedly was a proper one, and it would not have been error to have given it. But, had it been given, it would have been merely cumulative. There can be no doubt that the jury was instructed on both subjects discussed in the instruction in separate instructions. Therefore, it was not error to fail to give another instruction on the same subjects.

We have read the entire charge to the jury. In our opinion, the jury was fully, fairly and adequately instructed.

The judgment is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.